PHILIPS INDUSTRIES, INC v SMITH

Docket No. 77-5230. Submitted February 14, 1979, at Detroit.—Decided May 21, 1979.

Philips Industries, Inc. and Mobil Temp, Inc., were assignees of a lease on a factory building owned by Charles Smith and Lois A. Smith. The lease provided the tenant with an option to purchase the property and its improvements for an amount equal to the total cost of the land and improvements plus 10 percent. Philips and Mobile Temp attempted to exercise this option and requested the cost figures from the Smiths. When they felt that the Smiths were being unduly dilatory, Philips and Mobil Temp filed an action against them requesting damages for alleged overpayment of rent, an accounting of the actual cost to defendants of the land and improvements, and an injunction. The injunction was denied, but the defendants were instructed to supply any records relative to the cost of the building. Plaintiffs subsequently moved for production of certain documents, which was ordered by the court after hearings on the matter. A few weeks later, plaintiffs filed an entry of default for failure of the defendants to produce certain of the documents, and ultimately default judgment was entered against the defendants, Livingston Circuit Court, Paul R. Mahinske, J. Defendants appeal. *Held:*

The entry of default judgment, insofar as it was based on the alleged failure to produce certain documents as ordered by the court, was an abuse of discretion where none of the methods for entry of a discovery order, as outlined by court rule, were followed. The trial court also abused its discretion in basing its decision to enter default judgment on the defendants' recalcitrance throughout the discovery period because the plaintiffs' entry of default related only to the failure to produce specific documents. Default judgment was also too harsh a sanction in

REFERENCES FOR POINTS IN HEADNOTES
[1-3, 5] 23 Am Jur 2d, Depositions and Discovery §§ 146, 256, 260, 261.
[2-4] 4 Am Jur 2d, Appeal and Error § 115.
[4] 47 Am Jur 2d, Judgments §§ 1152, 1153, 1158.
[6] 4 Am Jur 2d, Appeal and Error § 487.

this case, where the period of delay was relatively short and where other sanctions were readily available.

Reversed and remanded.

1. JUDGMENT — DEFAULT JUDGMENT — DISCOVERY — FAILURE TO COMPLY.

Rendering a judgment by default for refusal to comply with a discovery order is an appropriate sanction where the refusal is flagrant and wanton (GCR 1963, 313.2[2][c]).

2. JUDGMENT — DEFAULT JUDGMENT — APPEAL AND ERROR — JUDGE'S DISCRETION — COURT RULES.

A default judgment granted pursuant to court rule for refusal to comply with a discovery order will not be disturbed on appeal absent a clear showing of an abuse of discretion (GCR 1963, 313.2[2][c]).

3. JUDGMENT — DEFAULT JUDGMENT — DISCOVERY — FAILURE TO COMPLY — JUDGE'S DISCRETION — COURT RULES.

A trial court's grant of a default judgment was an abuse of discretion where it was based on a defendant's failure to comply with a discovery order and none of the prescribed methods for entry of such order were followed and where it is conceded that the sought-after documents were in fact produced prior to the first hearing on the entry of the default judgment (GCR 1963, 522.1).

4. JUDGMENT — DEFAULT — DEFAULT JUDGMENT — FOUNDATION — SCOPE OF DEFAULT.

Entry of a default lays the foundation for the ultimate entry of a default judgment and advises the party to be defaulted of the reasons underlying the default; it is error for a trial court to exceed the scope of the default entered and to base its decision to grant default judgment on factors other than those set forth in the entry of default.

5. JUDGMENT — DEFAULT JUDGMENT — DISCOVERY — SANCTIONS.

Default judgment for failure to comply with a discovery order is too harsh a sanction where the delay between the order and the entry of default appears insubstantial when compared to other cases in which the sanction has been upheld, and where sanctions short of default were readily available.

6. APPEAL AND ERROR — RECORD — EX PARTE AFFIDAVITS.

The record of a case may not be enlarged on appeal by *ex parte* affidavits.

*Robert G. Corace, Jr.,* for plaintiffs.

*Bayer, Gornbein & Kaplan, P.C. (Barbara Klarman,* of counsel), for defendants.

Before: CYNAR, P.J., and D. E. HOLBROOK, JR., and D. C. RILEY, JJ.

D. C. RILEY, J. A full understanding of the present suit requires a detailed exposition of its labyrinthine factual history.

By complaint filed April 22, 1974, plaintiffs allege that on March 15, 1966, defendants, as landlords, entered into a lease with Mobil Temp, Inc., a Michigan corporation (hereinafter referred to as Mobil Temp of Michigan) as tenant. Under the terms of the lease, defendants agreed to construct a factory building upon property owned by them at 11871 Grand River Avenue, Brighton, Michigan, and to lease said building to Mobil Temp of Michigan. The term of the lease was for a period of "ten years from and after the time when the building to be erected thereon is completed". A monthly rental, equal to 1/12th times 9 percent of the actual cost of the land, building and improvements, was to be paid in advance.

The lease provided the tenant with an option to purchase the property and its improvements for a price equal to the total cost of the land, buildings and improvements, plus 10 percent of that total cost. Said option could be exercised by the tenant at any time during the term of the lease when not in default in the performance of its terms.

The subject lease further contained a provision prohibiting assignment or sublease of the premises absent written consent of the landlord.

On March 31, 1969, after obtaining defendants' consent, Mobil Temp of Michigan assigned its

tenant's interest in the lease to Mobil Temp, Inc., an Ohio corporation, wholly owned by Philips Industries (hereinafter both referred to as plaintiffs).

The complaint further alleged that plaintiffs sought to exercise their option to purchase the subject property after defendants refused to consent to a further assignment of the lease. Plaintiffs requested that defendants deliver to them an itemized statement, made under oath, setting forth the cost of the land, buildings, and improvements, showing in each case the date of acquisition, the person from whom acquired, and the defendants' cost of acquisition.

Convinced by a subsequent exchange of letters that defendants were unduly dilatory, plaintiffs commenced a civil action on April 22, 1974, requesting, *inter alia,* damages representing an overpayment of rent due, a full and complete accounting of the actual cost to defendants of the land and improvements, and a preliminary injunction awarding the above relief. Notice of deposition and production of documents was also filed contemporaneously with plaintiffs' complaint.

Defendants answered, affirmatively asserting, among other things, that plaintiffs had breached the lease by abandoning and failing to maintain the premises and had attempted to assign or sublease the property without the consent of the landlords.

A hearing on plaintiffs' requested injunction was held on April 29, 1974, at which time the court denied plaintiffs' petition, but instructed defendants to supply any account records relative to the cost of the building.

On May 8, 1974, defendants filed with the court

a bill of particulars outlining the cost of constructing the subject property.

At a hearing on May 13, counsel for plaintiffs advised the trial court that the portion of their petition which requested the documents pertaining to the cost of the building should be treated as a motion to produce documents pursuant to GCR 1963, 310.1(1). The court, at defendants' request, limited the scope of plaintiffs' discovery to certain relevant matters, including copies of invoices, receipts, cancelled checks, income tax returns from 1966, contracts pertaining to the purchase of materials or construction of the buildings, and all insurance policies on the building since 1966. The court indicated that defendants should comply with said order within a reasonable period of time.

Defendants filed additions to their bill of particulars on May 24, 1974, revealing that the exhibits were still incomplete but that additional documents would be forthcoming. On June 10, they advised that they did not have copies of all the income tax returns sought by plaintiffs.

Ten days later, plaintiffs moved the trial court to impose sanctions pursuant to GCR 1963, 313 on the grounds that defendants had refused to fully comply with the trial court's May 13, 1974, order. The motion did not specify what sanctions the plaintiffs were seeking.

At a hearing on June 24, concerning plaintiffs' motion for sanctions, still unspecified, defense counsel indicated that the defendants did not keep the cancelled checks requested by plaintiffs, but that the tax return would be obtained from the Internal Revenue Service, although it would require some time. At the conclusion of the proceeding the court made the following statements to defense counsel:

"THE COURT: Have the man produce the last four income tax returns by Friday together with an order to the Internal Revenue Service for the true copies of the tax returns from 1966 to that date or I'll entertain an order holding him in contempt of Court, and most likely to default them.

\* \* \*

"THE COURT: I am saying: they will be here by Friday or your man will be in contempt. That will be the twenty-eighth."

Four days later, on June 28, 1974, a written order to produce the requested documents was signed by the trial judge. The order provided that, in the event the order was not fully complied with, defendants would be held in contempt of court, their default would be entered and plaintiffs would be permitted to take a default judgment. A copy of the order was not mailed to defendants' attorney until at least July 10, 1974.

On July 22, plaintiffs filed an entry of default and affidavit in support thereof, averring that while they believed defendants' tax returns for 1970 through 1973 had been delivered to the court, the defendants had failed to produce a copy of an order to the Internal Revenue Service for the returns filed by defendants for 1966 through 1969.

Further proceedings were held upon plaintiffs' motion for default judgment on July 29, 1974. Defendants' counsel argued that the default should be set aside on the grounds that defendants' failure to comply with the trial court's June 28 order was attributable to defense counsel's misunderstanding of the trial court's oral order of June 24; that defendants did not approve the written order before it was entered on June 28, 1974, and therefore were not aware of the specifics of the trial

court's order.[1] The lower court concluded the hearing in the following manner:

"THE COURT: Well, I think you [defendants] would have been in default on the 28th without an order * * *."

Proceedings were set for August 5, 1974, on the possible default judgment. At the hearing, counsel for defendants orally moved the court to set aside the default, and again reiterated that he understood the trial judge at the June 24 hearing to have ordered defendants to provide the court with only their 1970 through 1973 income tax returns on or before June 28, 1974. Counsel further main-

[1] The transcript also reveals the following explanation by defense counsel:

"Prior to the time we received notice of said motion, we asked Mr. Stefani, the accountant for the Defendant, to go into his closed files and see if he had any tax returns or any memorandums which he had which he had filed with the Internal Revenue Service.

"Mr. Stefani did such and produced the record which he had photostated [from] those records, and I am advised by Mr. Smith that he sent the certification along with those records and they were filed with Your Honor prior to the time we had knowledge of this order. Your Honor should have those records in the file.

"We have complied as best we know how. The Plaintiff has this information. If he feels that this is not the information that was supplied to the Internal Revenue Service, all we can say is this is what Mr. Stefani says he sent to the Internal Revenue Service; this is all he has.

"If the Court wishes us to supply [sic] the Internal Revenue Service, we'll send copies. I did not think this was part of the order of June 24, 1974. I would think that it would be hard pressed to defend my clients on the basis of a misunderstanding, at least by counsel, that such an order included the certification to produce these 1966 through 1969 records.

"We have tried to comply with the order. To enter the default would be the most harshest remedy. We don't think the order itself if it had been submitted to us originally for approval, we would have known exactly what the Plaintiff's [sic] Counsel wanted and complied then and there. But he didn't seek to get our approval, he went ahead and had it entered. It was my misconception that such was the Court order.

"We have complied with the order 1970 to 1973, such was delivered to the Court on that day."

tained that he became aware other documents were required when he received a photostatic copy of the June 28 order approximately two weeks later. Thereafter, he advised defendants that they should order from the IRS copies of their tax returns for 1966 through 1969. To his knowledge defendants had received no prior communication regarding the need for returns prior to 1970. Defendant Charles Smith testified in a manner substantially corroborating his attorney's assertions.

The hearing concluded with a dispute as to the context of the court's oral order of June 24, 1974, the propriety of entering default judgment on the court's June 28, 1974 order, and the nature of the default proceeding. The trial judge indicated that the default would stand until it was set aside or perfected. Defense counsel stated that he would file a motion to set aside the default, which motion was filed on August 12, 1974.

In a written opinion filed October 24, 1975, the court denied defendants' motion to set aside the default and granted plaintiffs' motion for default judgment. An order to that effect was entered December 1, 1975, and filed nine days later.[2]

Several issues are raised on appeal, only one of which we need consider at length. Defendants claim that the lower court erred in failing to set aside plaintiffs' entry of default and in granting default judgment. We agree, despite our belief that the actions of defendants and their original attorneys in the case at bar could be characterized as less than a good faith effort to expedite the litigation.

GCR 1963, 520 governs default proceedings. GCR 1963, 520.1 authorizes the *entry* of default by a party to the action:

---

[2] Neither the record nor briefs reveal why default judgment was granted more than one year after hearings on the matter.

".1 Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the person seeking the relief or his attorney shall enter the default of that party by filing with the clerk a statement called a default, signed by the person seeking the relief or his attorney, stating that default is entered and stating the reasons therefor."

GCR 1963, 520.2(2) provides for a judicially imposed default *judgment:*

"(2) By the Court. * * * the party entitled to a judgment by default shall apply to the court therefor; * * *. If the party against whom judgment by default is sought has appeared in the action, he * * * shall be served with written notice of the application for judgment at least 7 days prior to the hearing on such application."

At the outset we note that the parties are in substantial disagreement as to why the default judgment was rendered. Evident throughout defendants' challenge to the entry of default judgment is their understanding that they were defaulted because of their failure to comply with the trial court's June 28, 1974, discovery order. They claim that there were substantial defects or irregularities in the entry of that order which compounded an innocent mistake made by defense counsel in comprehending the entirety of the trial court's oral order made at the June 24 hearing. Plaintiffs, on the other hand, argue that the trial court considered the entire history of the discovery proceedings beginning with the original order to produce documents filed on May 13, 1974, and entered default against defendants, not only because of their failure to comply with the June 28 order, but also because defendants apparently had access to the requested documents throughout the period

they failed to comply and because some of the cost figures supplied by defendants to support their stated option price were inconsistent and suspicious.

Both sides agree, however, that default resulted from defendants' alleged omission to produce documents pursuant to a GCR 1963, 310.1(1) discovery order. GCR 1963, 313.2(2) authorizes a trial court to impose a variety of sanctions for failure to comply with a discovery directive, including:

"(c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;" GCR 1963, 313.2(2)(c).

Rendering judgment by default for refusal to make discovery is a drastic sanction but one which is nevertheless appropriate where such refusal is flagrant and wanton. *Abadi v Abadi,* 78 Mich App 73, 77; 259 NW2d 244 (1977), *lv den* 402 Mich 870 (1978), *Washburn v Lake Diane, Inc,* 17 Mich App 704, 706; 170 NW2d 298 (1969). Default judgments given pursuant to GCR 1963, 313.2(2)(c) will not be disturbed on appeal absent a clear showing of abuse of discretion. *Ackron Contracting Co, Inc v Oakland County,* 87 Mich App 294; 274 NW2d 44 (1978), *Humphrey v Adams,* 69 Mich App 577, 582; 245 NW2d 167 (1976).

Insofar as the trial judge based his decision to enter default judgment against defendants on their failure to comply with the June 28, 1974, discovery order, we find such an abuse. GCR 1963, 522.1 furnishes the procedural prerequisites to the entry of such an order and provides as follows:

".1 Signing of Judgments and Orders. * * * Except as

provided herein and in Rule 520, all judgments and orders in civil cases shall be dated and signed by the judge who may enter the judgment or order upon the granting of the same or by one of the methods hereinafter provided.

"(1) If not so entered, the judge shall sign the judgment or order when approved as to form by all the parties or their attorneys and it is submitted to him within ten days after the granting of the same if, in the judge's determination, it comports with his decision.

"(2) If the judgment or order has not been signed under the preceding provisions hereof, within five days after the granting of the judgment or order, any party may serve a copy of a proposed judgment or order upon the other parties or their attorneys together with a notice to them that the proposed judgment or order will be submitted to the judge for signing if no written objections thereto are filed with the clerk of the court within five days and file the original thereof together with a proof of service of same upon the other parties with said clerk. * * *

"(3) If the provisions of subparagraphs (1) or (2) hereof have not been utilized, the prevailing party shall or any other party may prepare a proposed judgment or order and shall notice the same for settlement before the judge within ten days after the granting of same. The party securing the signing of the judgment or order shall serve a copy thereof within five days after it has been signed upon all other parties or their attorneys and file proof of service thereof with the clerk of the court."

It appears that none of the methods for entering an order outlined above were followed with respect to the June 28 order, which was drafted by plaintiffs' attorney. The order does not bear an approval as to form by defendants or counsel. There is no indication in the record that the plaintiffs either served a proposed order on the defendants with notice that the order would be entered in the absence of written objections from defendants, or

that the plaintiffs noticed a proposed order for settlement before the trial court. As the proof of service clearly indicates, the plaintiffs did not serve a copy of the order on the defendants within five days after it was signed.

Although the trial court's oral order of June 24 arguably apprised defendants of what they were required to produce, it nevertheless appears that defendants did not receive written notice of the contents of the order to which they were entitled prior to its entry.

More importantly, we note that the written order was not signed by the trial judge until the final day given defendants for compliance, and was not served on them until at least 12 days later. Furthermore, while the record itself is not conclusive, plaintiffs' brief concedes that defendants produced the sought after tax returns on July 24, 1974, five days prior to the first hearing on the entry of default judgment.

Based on these deficiencies, we hold that the trial judge abused his discretion insofar as his decision to grant default judgment was premised upon the June 24, 1974, discovery order.[3]

Whether the trial court abused its discretion in basing its decision to enter default judgment on defendants' recalcitrance throughout the discovery period is a closer question. For two reasons, however, we again answer in the affirmative. First, in making its determination, the court erroneously exceeded the scope of default entered by plaintiffs, which was based solely upon defendants' noncompliance with the June 28, 1974, discovery order for tax returns. Entry of a default under GCR 1963,

---

[3] A reading of the court's October 24, 1975, opinion reveals that the trial judge failed to address defendants' objections to the defective entry of the June 28, 1974 order.

520.1 lays the foundation for the ultimate entry of judgment and, thus, advises the party to be defaulted of the reasons underlying the default. This recital is essential to the defaulted party's ability to oppose entry of judgment. In this regard we note that both plaintiffs' affidavit in support of default and defendants' motion to set aside default addressed only the failure to produce 1966-1969 tax returns.[4]

We are further convinced that default judgment was too harsh a sanction in the present case. When compared to other cases wherein the sanction of dismissal or default has been upheld, the delay between the original order to produce (May 13, 1974) and the entry of default (July 22, 1974), and subsequent hearings on July 29 and August 5, appears insubstantial. See, *e.g., Ackron Contracting Co, Inc v Oakland County, supra,* (case pending for 19 months), *Krim v Osborne,* 20 Mich App 237; 173 NW2d 737 (1969), *lv den* 383 Mich 765 (1970), (case pending for more than 2-1/2 years; the majority of delay attributable to plaintiff's failure to comply with discovery). Furthermore, while the conduct and intentions of defendants and their attorney are certainly suspect, other sanctions short of default judgment, such as the imposition of costs or contempt of court citations, see *MacArthur Patton Christian Ass'n v Farm Bureau Ins Group,* 403 Mich 474; 270 NW2d 101 (1978), were readily available in the case at bar.

The default judgment is vacated and the case remanded to the trial court. Defendants' claims of bias and prejudice on the part of the trial judge, supported in part by *ex parte* affidavits which may not serve to enlarge the record on appeal, *People v*

---

[4] Plaintiffs' trial brief in support of their motion, however, addressed other considerations as well.

*Taylor,* 383 Mich 338, 362; 175 NW2d 715 (1970), *People v Nelson Johnson,* 58 Mich App 473, 478; 228 NW2d 429 (1975), *lv den* 394 Mich 784 (1975), fail to persuade us that a fair and impartial resolution of this litigation requires proceedings before a different judge.

Reversed and remanded. Costs to abide the final outcome.