DEVICE TRADING, LIMITED v THE VIKING CORPORATION

Docket No. 47044. Submitted November 17, 1980, at Grand Rapids.—
Decided April 21, 1981. Leave to appeal applied for.

Device Trading, Limited, of Bangkok, Thailand, brought an action
against The Viking Corporation for damages resulting from
breach of an exclusive-distributorship agreement. Upon comple-
tion of the presentation of the parties' proofs, defendant moved
for a directed verdict, which motion was denied. Following
trial, the jury returned a verdict for plaintiff. Defendant moved
for judgment notwithstanding the verdict or, in the alternative,
for a new trial, which motion was denied, Barry Circuit Court,
Hudson E. Deming, J. Defendant appeals, alleging that the
trial court erred in submitting the question of the agreement's
validity to the jury, in failing to submit its instruction relative
to the agreement's validity to the jury, and in denying its
motions. *Held:*

1. The trial court properly submitted to and instructed the
jury on the question whether illegal payments made by plain-
tiff to the Royal Thai Army to procure a contract which
plaintiff was unable to fulfill due to defendant's breach of the
exclusive-distributorship agreement rendered the agreement
void.

2. The record does not support defendant's contention that
the trial court's refusal to instruct the jury with defendant's

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur 2d, Contracts § 158.
75 Am Jur 2d, Trial § 398.
[2] 75 Am Jur 2d, Trial §§ 588-590.
[3] 24 Am Jur 2d, Dismissal, Discontinuance and Nonsuit §§ 56, 57.
47 Am Jur 2d, Judgments §§ 1158, 1165.
Propriety of dismissal of action with prejudice, under Rule 41(b) of
Federal Rules of Civil Procedure, upon ground of plaintiffs failure
to comply with order of court. 15 ALR Fed 407.
[4] 75 Am Jur 2d, Trial §§ 463-468.
[5] 17 Am Jur 2d, Contracts § 444.
22 Am Jur 2d, Damages § 203
[6] 22 Am Jur 2d, Damages §§ 22-25.
[7] 17 Am Jur 2d, Contracts §§ 441-447.

requested instruction constituted error. The court's instruction appropriately stated the issue to be considered.

3. The trial court did not abuse its discretion in denying defendant's motions for a directed verdict, a judgment notwithstanding the verdict, or, in the alternative, a new trial. Defendant was not prejudiced by the contradictory answers given by plaintiff to defendant's interrogatories and during trial.

4. The trial court properly submitted the question of plaintiff's mitigation of damages to the jury. The record does not reveal such overwhelming evidence of plaintiff's failure to mitigate as to require reversal of the jury verdict. In addition, the jury's finding that plaintiff's damages were not too speculative cannot be said to be clearly erroneous. Thus, the trial court did not err in denying defendant's motions for a directed verdict, judgment notwithstanding the verdict, or a new trial.

Affirmed.

1. CONTRACTS — ILLEGAL CONTRACTS — QUESTIONS OF FACT.

A contract remotely connected with an illegal act is not itself rendered illegal thereby, and it is the trier of fact which is to determine whether or not such a contract is valid.

2. COURTS — JURY INSTRUCTIONS — FAILURE TO INSTRUCT — FOREIGN LAW.

A trial court's failure to give a correctly phrased and applicable instruction in the form requested or in a substantially equivalent form constitutes error, but where an instruction is based on a premise under the law of a foreign jurisdiction a party cannot predicate error in the court's refusal to instruct without first producing evidence of such law.

3. COURTS — DISMISSAL OF COMPLAINTS — DEFAULT JUDGMENTS — DISCOVERY.

A trial court in its discretion may dismiss a complaint for failure of a plaintiff to comply with a discovery order, however, the granting of a default judgment for such refusal is appropriate only where the refusal is flagrant and wanton.

4. TRIAL — PARTIES — DISCOVERY — DIRECTED VERDICTS — NEW TRIALS.

A defendant who is not prejudiced by a plaintiff's contradictory answers to interrogatories and testimony during trial is not entitled to a directed verdict or a new trial.

5. CONTRACTS — MITIGATION OF DAMAGES — BURDEN OF PROOF — QUESTIONS OF FACT — APPEAL.

A defendant in a contract action must show that the plaintiff has

not employed every reasonable effort to minimize damages, and the question as to whether the plaintiff has mitigated damages is for the trier of fact; on appeal, a jury's verdict relative to mitigation will not be overturned absent overwhelming evidence on the record to the contrary.

6. DAMAGES — RECOVERY.

Damages which are remote, speculative, contingent, or not the result of the alleged injury are not recoverable, but damages cannot be denied merely because they are difficult to ascertain, mathematically or otherwise.

7. CONTRACTS — BREACH OF CONTRACT — RECOVERY OF PRE-CONTRACT EXPENSES — QUESTIONS OF FACT.

Generally, expenses incurred by a party before entering into a contract are not recoverable in an action for breach absent proof that such recovery was within the contemplation of the parties; the determination is for the trier of fact.

*Warner, Norcross & Judd* (by *John H. Logie* and *Jeffrey O. Birkhold*), for plaintiff.

*Miller, Johnson, Snell & Cummiskey* (by *Stephen C. Bransdorfer* and *J. Michael Smith*), for defendant.

Before: MACKENZIE, P.J., and T. M. BURNS and BASHARA, JJ.

T. M. BURNS, J. Plaintiff, Device Trading, Limited, of Bangkok, Thailand, brought the instant action to recover damages resulting from an alleged breach of an exclusive-distributorship agreement made with the defendant, Viking Corporation, which is the manufacturer of the Viking Firecycle sprinkler system. Plaintiff claimed that it suffered damages arising out of the expenses it incurred and the profits that it lost in a building project for the Royal Thai Army when defendant breached the exclusive-distributorship agreement.

In a complaint filed on July 13, 1977, plaintiff

alleged the existence of the exclusive-distributor-ship agreement between itself and Viking and further alleged a breach by Viking of that agreement. The breach was said to have occurred when Viking agreed to supply its sprinkler system for the Thai Army project to a competitor of plaintiff, Hart Engineering, Inc., at the same time that plaintiff remained Viking's exclusive distributor of that product in Thailand. Plaintiff claimed damages in the amount of $176,368.

Following a jury trial, a verdict was returned in favor of plaintiff on April 12, 1979, in the amount of $186,114. Plaintiff was permitted to amend its complaint to conform it to the jury's verdict. On May 15, 1979, defendant Viking moved for a judgment notwithstanding the verdict or, in the alternative, a new trial. On July 31, 1979, defendant's motion was denied. Defendant now appeals, and we affirm.

Defendant first claims that plaintiff was barred from seeking damages for the alleged breach of the exclusive-distributorship agreement because the damages that plaintiff claims it incurred on account of this breach arose out of an incident in which plaintiff was not able to fulfill a contract with the Royal Thai Army which it had procured by bribes and illegal bid-fixing. Defendant claims that this bribery and bid-fixing rendered the exclusive-distributorship agreement void and argues that plaintiff should be prohibited from using Michigan courts to recover either the payments which it expended to procure the Royal Thai Army contract or the lost profits which it would have made.

The trial judge instructed the jury in this case that:

"It is for you to determine whether the payments

were made and, if made, whether they rendered the exclusive distributorship agreement null and void.

"A contract remotely connected with an illegal act is not itself rendered illegal thereby. If you find that illegal payments were made by Plaintiff to officers of the Royal Thai Army, you must then determine whether the payments were remotely connected to the agreement. If you find that the illegal payments were made, you may find that the exclusive distributorship was null and void unless you find that the illegal payments were only remotely connected with the exclusive distributorship agreement."

We find no error in the trial judge's submission of this question to the jury or in the instructions themselves.

In *Miller v Radikopf,* 394 Mich 83; 228 NW2d 386 (1975), the plaintiff and defendant sold Irish Sweepstakes tickets and received two free tickets for every 20 tickets which they sold. In June, 1972, the defendant won approximately $497,000. The plaintiff claimed that pursuant to an oral agreement between the parties all free tickets would be jointly owned by them and that all prizes won by either of them would be divided equally. Although the trial court and this Court denied recovery to the plaintiff on the ground that the contract was illegal and unenforceable because it was a crime to sell lottery tickets in this state, the Supreme Court reversed.

The Supreme Court noted that no Michigan statute prohibited the holder of a winning Irish Sweepstakes ticket from receiving proceeds voluntarily paid by the lottery without legal action and that because the receipt of Irish Sweepstakes winnings voluntarily paid by the promoter violated neither Irish nor Michigan law, a promise to share amounts so received constituted legal consideration, did not violate public policy, and was enforceable. Further the Court held:

"It is consonant with the public policy of this state to encourage performance of legal contracts and to foster the just resolution of disputes. Nonenforcement of the agreement claimed by Miller would not tend to discourage the sale of Irish Sweepstakes tickets. It could reward, without any corresponding benefit, promissory default. We conclude that public policy would not be offended by enforcement of the claimed agreement." *Id.*, 89.

The exclusive-distributorship agreement between plaintiff and defendant in this case is entirely legal. The jury apparently found that the distributorship agreement was sufficiently distinct from the admittedly illegal bribery and bid-fixing. We cannot overturn that finding. Therefore, we find this issue to be without legal merit.

Defendant next claims that it is entitled to a new trial because the trial judge failed to submit to the jury a proposed instruction that a contract entered into for an illegal purpose is void or voidable. Our examination of the record fails to convince us that this issue presents a case for error requiring reversal.

It is error for a trial judge not to give a correctly phrased and applicable instruction in the form requested or in a substantially equivalent form. *Bank of Lansing v Stein, Hinkle, Dawe & Associates Architects, Inc,* 100 Mich App 719; 300 NW2d 383 (1980).

The trial judge in this case did not err in failing to give defendant's requested instruction because it failed to adequately distinguish between a legal exclusive-distributorship agreement and the act of "stifling competition". Further, defendant did not cite any applicable Thai law in this area. Defendant cannot predicate error on the trial judge's refusal to give the requested instruction without

first producing clear evidence that plaintiff's course of conduct was illegal under Thai law. *Miller, supra.*

In view of the testimony presented, the trial judge's jury instruction appropriately stated the issue of illegality to be considered by the jury. Further, it is unlikely that the more detailed instruction proposed by defendant would have altered the jury's verdict in light of the fact that the jury, by finding in plaintiff's favor, apparently acknowledged the illegality of plaintiff's bribes but found them to be sufficiently distinct from the distributorship agreement so as not to render the agreement void.

Defendant next argues that it is entitled to a directed verdict or, in the alternative, to a new trial, because plaintiff did not truthfully answer certain pretrial interrogatories.

The record indicates that prior to trial defendant submitted to plaintiff interrogatories that requested information regarding the name of the person or persons on the purchasing committee for the Royal Thai Army who made the decision to give plaintiff the contract for installation of the sprinkling system. Plaintiff responded by saying that the requested information was irrelevant and immaterial. Subsequently, defendant obtained a court order instructing plaintiff to answer this question. Plaintiff's amended response was that it did not know who was on the purchasing committee. However, at trial one of the managing partners of the plaintiff corporation admitted that plaintiff did know who was on the Royal Thai Army committee that had let the contract to plaintiff.

After the presentation of the parties' proofs, defendant filed a motion for a directed verdict or,

alternatively, for a new trial which was based in part upon plaintiff's refusal to disclose the information requested in the interrogatories. In denying defendant's motion, the trial judge noted that defendant had made no request for a continuance so that a deposition could be taken after the true status of plaintiff's knowledge regarding this information had come to light. The judge further noted that the failure of plaintiff to disclose the names of the persons on the purchasing committee was not relevant to any question before the jury and that, as such, defendant was not prejudiced. We agree with the trial judge's ruling in this matter.

The authority of a trial judge to take the drastic action of dismissing a plaintiff's complaint for failure to comply with a discovery request is clear. *MacArthur Patton Christian Ass'n v Farm Bureau Ins Group,* 403 Mich 474; 270 NW2d 101 (1978), *Dundee Cement Co v Schupbach Brothers, Inc,* 94 Mich App 277; 288 NW2d 379 (1979), *Philips Industries, Inc v Smith,* 90 Mich App 237; 282 NW2d 788 (1979). However, a lower court order rendering judgment by default for refusal to comply with a request or order for discovery is appropriate only where such refusal is flagrant and wanton. *Id.*

While we cannot sanction plaintiff's refusal to comply with the lower court order that it disclose the names of the members of the Royal Thai Army purchasing committee, we agree with the lower court that this action of plaintiff warrants neither a directed verdict, a judgment notwithstanding the verdict, nor a new trial.

The real question at trial was whether defendant breached the exclusive-distributorship agreement with plaintiff. To that extent, the identity of governmental officials who had contracted with plaintiff to purchase goods covered under that

distributorship agreement was not so central to this litigation as to require dismissal of it. The fact that plaintiff had not told the truth in the interrogatories was explored at trial and contrasted with plaintiff's trial testimony. Thus, defendant was permitted to impeach plaintiff on this issue. However, the record does not reflect that defendant was clearly prejudiced by plaintiff's contradictory answers regarding the members of the purchasing committee. As a consequence, we hold that the lower court did not abuse its discretion in denying defendant's motions for a directed verdict, a judgment notwithstanding the verdict, or, in the alternative, for a new trial on this ground.

Finally, defendant argues that the lower court erred by not granting its motion for a directed verdict, judgment notwithstanding the verdict, or, in the alternative, a new trial on the ground that plaintiff failed to mitigate damages, that plaintiff's proof of damages was too speculative to warrant an award, and that plaintiff's alleged expenses in procuring the contract were not incurred in reliance upon the exclusive-distributorship agreement.

With respect to defendant's first claim, that plaintiff is entitled to no damages because it failed to mitigate any loss which it suffered, Michigan law is clear. It is the burden of a defendant to show that a plaintiff has not employed every reasonable effort to minimize damages. *Reinardy v Bruzzese,* 368 Mich 688; 118 NW2d 952 (1962), *Froling v Bischoff,* 73 Mich App 496; 252 NW2d 832 (1977). The trial judge in this case properly submitted the question of whether plaintiff had used all reasonable efforts in an attempt to mitigate its damages to the jury. We cannot second-guess the jury on this issue. Our consideration of the record does not find such overwhelming evi-

dence that plaintiff failed to mitigate its damages as would be required to warrant removal of this issue from the jury's consideration. As a consequence, we are bound by the jury's verdict.

We similarly reject defendant's argument that plaintiff's proof of damages was too speculative to form any basis for a jury award. Although damages are not recoverable where they are remote, speculative, contingent, or not the result of the injury, *Fisk v Powell,* 349 Mich 604; 84 NW2d 736 (1957), damages cannot be denied merely because they are difficult to ascertain mathematically or otherwise. *Curtis v Hartford Accident & Indemnity Co,* 335 Mich 416; 56 NW2d 240 (1953).

The lower court record unambiguously indicates that defendant permitted two exclusive distributorships of its products to exist in Thailand simultaneously. Further, it is uncontradicted that plaintiff was a party to one of these exclusive-distributorship agreements and that the Royal Thai Army contract specified that defendant's fire sprinkling equipment was to be installed. The jury reasonably could have concluded that if plaintiff were the sole distributor of defendant's product in Thailand it would have received the government contract. Viewed in this light, the jury's implicit finding that plaintiff's damages were not too speculative cannot be said to have been clearly erroneous.

Finally defendant's contention that expenses incurred by a party before a contract is made generally are not recoverable unless within the contemplation of the parties is correct. *Cacavas v Zack,* 43 Mich App 222; 203 NW2d 913 (1972). However, it does not necessarily follow that plaintiff is not entitled to any pre-1976 promotional expenses for the Royal Thai Army contract. The proofs at trial are not so clear that the jury reasonably could not

have believed that the exclusive-distributorship agreement was in existence prior to January 8, 1976, the date of a letter that is the earliest written evidence tending to show that plaintiff was defendant's sole distributor in Thailand. Other proofs admitted at trial tended to indicate that the exclusive-distributorship agreement existed prior to this date, perhaps as early as 1971. Therefore, the equivocal evidence on when the exclusive-distributorship agreement came into existence is not so clear that reasonable minds may not have disagreed. For this reason, the trial judge properly submitted this question to the jury.

Having considered all issues raised by defendant in this appeal, we find that none of them merits reversal. Affirmed.

Costs to plaintiff.