NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0337n.06

No. 10-2012

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Mar 28, 2012*

LEONARD GREEN, Clerk

RETAINED REALTY, INC., )
)
    Plaintiff-Appellant, )
)
v. )
)
MICHIGAN PIONEER TITLE INS. CORP., et al., )
)
    Defendants-Appellees. )
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE: SILER, ROGERS, and WHITE, Circuit Judges.

ROGERS, Circuit Judge. Retained Realty, Inc. (the successor in interest to Emigrant Mortgage Co.) appeals the district court's grant of summary judgment to the defendant Ticor Title Insurance Corporation. This case arose when a closing agent failed to properly record a mortgage during the purchase of residential property. As recorded, the mortgage only encumbered part of the property. Emigrant,[1] the lender, first discovered a potential problem with the mortgage's recording during its post-closing audit and before the mortgagors defaulted. In response, Emigrant mailed a letter to the closing agent asking it to re-record the mortgage. The closing agent failed to respond or remedy the problem. By the time the property owners defaulted, they no longer retained the unencumbered portion of the property. As a result, Emigrant suffered a loss when it foreclosed on

---

[1] Retained Realty and Emigrant are referred to here as "Emigrant."

the property. Emigrant then sued the closing agent and Ticor, the title insurance provider, to recover for its losses.

The district court concluded that Emigrant's failure to take any action to mitigate its losses beyond sending a letter was unreasonable as a matter of law and precluded recovery. This was improper because the reasonableness of Emigrant's mitigation efforts presented a question for the factfinder.

In 2002, Emigrant Mortgage Co., an out-of-state lender, extended a $700,000.00 mortgage loan to Maher and Cindy Jabero. This loan was secured by a mortgage on the Jaberos' property at 22126 Beck Road, Northville, Michigan. The property consisted of four contiguous parcels (Parcels 23, 24, 25, and 26), with the Jaberos' home situated on Parcel 24. Parcels 23, 25, and 26 remained unimproved. Even though the security instruments accompanying the mortgage only covered Parcel 24, the mortgage nevertheless incorporated several riders. Among those, Rider E states that a "Blanket Mortgage/Lien" will be placed on all four parcels.

Prior to the closing, Emigrant obtained a title commitment for the issuance of a title insurance policy on the Jaberos' property through Ticor Title Insurance Co., d/b/a American Pioneer Title Insurance Co. (Ticor). This title commitment mentioned only Parcel 24. On February 28, 2002, Ticor provided Emigrant with a "Closing Service Letter" on the property in which Ticor agreed to reimburse Emigrant for actual losses incurred in connection with the closing on the Jaberos' property, including losses incurred if the title closing agent, Michigan Pioneer Title Co. (MPTC), failed to follow Emigrant's closing instructions. This letter read:

> When title insurance of [Ticor Title Insurance Co.] is specified for your protection in connection with closings of real estate transactions in which you are to be . . . a lender secured by a mortgage (including any other security instrument) of an interest in land, [Ticor Title Insurance Co.], subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by said Issuing Agent or Approved Attorney when such loss arises out of:
>
> 1. Failure of said Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien . . . .

At the time of the closing, Emigrant gave written closing instructions to MPTC directing it to ensure that Emigrant, as the lender, had "a valid, enforceable first priority lien encumbering the Property."[2] The instructions also directed MPTC to attach the legal description of the property and all riders—including Rider E—to the mortgage before recording it. MPTC, however, failed to follow these instructions and neglected to record Rider E when it recorded the mortgage on May 13, 2002.

MPTC's error did not go unnoticed by Emigrant. In conducting a post-closing audit, Emigrant discovered that Rider E had not been attached to the recorded mortgage. On July 9, 2002, Emigrant sent MPTC a letter by regular mail informing it of the omission and directing it to re-record the mortgage with Rider E attached. MPTC did not respond to the letter, nor did it re-record the mortgage.

---

[2] MPTC was originally named as a defendant but later deemed to be a non-viable entity and dismissed without prejudice by the district court.

In 2004, the Jaberos defaulted on their mortgage and Emigrant commenced foreclosure proceedings. On July 2, 2004, Emigrant notified its title insurer, Ticor, that it was undertaking foreclosure proceedings against the Jaberos. Emigrant also informed Ticor that The Bank of Bloomfield Hills held a prior mortgage on Parcel 24, but Emigrant failed to mention any issues related to Rider E. The Jaberos soon thereafter cured their default and Emigrant canceled the foreclosure proceedings on July 26, 2004. A month later on August 27, 2004, the County Treasurer sold one of the Jaberos' vacant parcels to a third party at a tax sale. The Jaberos sold the two remaining vacant parcels on May 19, 2005.

In 2005, the Jaberos defaulted on their mortgage a second time, and Emigrant again commenced foreclosure proceedings. Realizing Rider E had not been recorded and that three of the four parcels no longer belonged to the Jaberos, Emigrant notified Ticor of the situation and submitted a claim by letter dated June 9, 2005. Emigrant then foreclosed on the only remaining parcel (Parcel 24) and obtained the property at the foreclosure sale on October 18, 2005, for $792,355.25. Emigrant sold Parcel 24 on April 25, 2007, and contends it sustained a loss of $381,097.07.

Emigrant subsequently filed an action against Ticor for "vicarious liability" for damages caused by Ticor's agent, MPTC; it also sued MPTC for breach of contract, breach of fiduciary duty, and negligence. The district court construed Emigrant's claim against Ticor as one sounding in contract even though Emigrant's complaint contained no such claim. The district court noted that, were the claim to survive, it would direct Emigrant to amend its complaint. Ticor then moved for

summary judgment on the ground that Emigrant's failure to mitigate its damages precluded recovery. In Ticor's view, once Emigrant learned that Rider E had not been recorded in 2002, it should have taken steps beyond simply sending MPTC a letter notifying it of this deficiency. Emigrant countered that summary judgment was inappropriate because the reasonableness of its mitigation efforts was a question for a jury. The district court agreed with Ticor and granted summary judgment. Emigrant timely appealed.

The reasonableness of Emigrant's mitigation efforts should not have been decided as a matter of law. In general, Michigan law treats the reasonableness of a party's mitigation efforts as a question of fact for the jury. *Pa. Life Ins. Co. v. City of River Rouge*, 676 F. Supp. 2d 575, 582 (E.D. Mich. 2009) (citing *Bak v. Citizens Ins. Co. of Am.*, 503 N.W.2d 94, 99 (Mich. Ct. App. 1993)); *Snell v. UACC Midwest, Inc.*, 487 N.W.2d 772, 775-76 (Mich. Ct. App. 1992). While "overwhelming evidence" of a plaintiff's failure to mitigate will warrant removal of the issue from a jury's consideration, *Device Trading Ltd. v. Viking Corp.*, 307 N.W.2d 362, 366 (Mich. Ct. App. 1981), this is not such a case. The precise line for what was reasonable under the circumstances in this matter is not clearly defined and is open to question.

The undisputed facts show that when Emigrant conducted an audit of the closing file after receiving the recorded mortgage it noticed that Rider E was missing. Emigrant says it did not know whether the riders had not been returned with the legal package inadvertently, or whether they were not attached to the mortgage when it was recorded. Emigrant responded by sending MPTC a letter informing it of the error and directing it to re-record the mortgage. MPTC did not acknowledge

receipt of the letter, and Emigrant took no further action until the Jaberos defaulted on the mortgage a second time.

The only question on appeal is the reasonableness of Emigrant's mitigation efforts. Michigan law requires that parties injured in contract and tort actions make "every reasonable effort" to mitigate their damages. *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 30 (Mich. 1994); *Williams v. Am. Title Ins. Co.*, 269 N.W.2d 481, 486 (Mich. Ct. App. 1978). In practice, this duty calls for a party to use "such means as are reasonable under the circumstances to avoid or minimize the damages." *Shiffer v. Bd. of Educ. of Gibraltar Sch. Dist.*, 224 N.W.2d 255, 258 (Mich. 1974) (quoting C. McCormick, Law of Damages § 33 at 127 (1935)). Whether Emigrant's decision to send a letter without further action was reasonable under the circumstances is debatable and therefore not resolvable on summary judgment.

Michigan law does not require Emigrant to have been successful in mitigation; a "claimant's burden is not onerous." *Rasheed*, 517 N.W.2d at 27 (quoting *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983)). "Success" in this matter would have entailed Emigrant's contacting MPTC and MPTC's re-recording the mortgage with Rider E attached. Yet the standard of care is something less than success, and the dilemma lies in determining how much less Emigrant could have done and still be found to have acted reasonably. On one end of the spectrum, had Emigrant taken no steps after learning of the recording deficiency, this case would have been appropriately decided on summary judgment. On the other end, the reasonableness of Emigrant's

mitigation efforts could not be questioned if it had re-recorded the mortgage itself. Emigrant's actions fell somewhere between those bookends and to which side it fell remains in question.

In contrast to this case, Michigan courts have been clear in holding that plaintiffs breached the duty to mitigate damages when they failed to take *any* action to minimize their losses. For example, in *Williams v. American Title Insurance Co.*, the court held that the plaintiff's *total failure* to find a use or market for restaurant equipment after a restaurant's closing constituted a breach of the duty to mitigate damages. 269 N.W. 2d at 486 (emphasis added). *Farm Credit Services v. Weldon*, 591 N.W.2d 438, 446 (Mich. Ct. App. 1998), is another example where a party's failure to act constituted a breach of the duty to mitigate. *Farm Credit* involved an action between an agricultural lender and farmer borrowers, where the farmers alleged that the agricultural lender acted in bad faith when it refused to surrender its collateral to a creditor. This decision, they claimed, resulted in the creditor's foreclosing on the farmers' property. The jury in that case awarded the farmers damages of $500,000. On appeal, the court considered the farmers' admission that they had alternative sources from which to borrow money and pay the creditor; yet they did nothing. *Id.* This inaction—the failure to take any action to mitigate damages—precluded recovery.

In arguing that the reasonableness of Emigrant's mitigation efforts was properly decided as a matter of law, Ticor points to Emigrant's failure to take action in 2004 when the Jaberos first defaulted on their mortgage. At that time, the Jaberos retained all four parcels. Had Emigrant acted then to re-record the mortgage, contact MPTC, or notify Ticor, its losses might have been reduced or avoided. Again, the standard is not one of success. Further, the failure to mitigate is an

affirmative defense under Michigan law, and the burden of proving the plaintiff has not used every reasonable effort falls to the defendant. *Rasheed*, 517 N.W.2d at 27; *Froling v. Bischoff*, 252 N.W.2d 832, 834 (Mich. Ct. App. 1977). The burden, thus, fell on Ticor to prove that Emigrant's sending MPTC a letter by regular mail was unreasonable under the circumstances. But Ticor has not shown what a party in Emigrant's position, having learned of a potential recording error, would be expected to do. Would a follow-up phone call have been sufficient? Would sending the letter by registered mail have made the difference? Simply put, the standard of care remains in question and is for the factfinder to decide.

Finally, Ticor asks the court to affirm the district court's decision on the alternative ground that Michigan's full credit bid rule bars recovery under a closing protection letter.[3] Ticor first raised this argument in its reply brief before the district court; the district court did not address this argument in its decision. On appeal, Ticor's treatment of this argument consists of one sentence in a footnote. Ticor says only that Michigan's full credit bid rule "extinguishes the mortgage debt and precludes any recovery under a closing protection letter because there is no actual loss." Ticor cites *New Freedom Mortg. Corp. v. Globe Mortg. Corp.*, 761 N.W.2d 832, 839-40 (Mich. Ct. App. 2008), without mentioning the relevant holding in that case. We decline to construct an argument on Ticor's behalf, and accordingly, do not reach this alternative argument.

---

[3] Ticor also argues it should prevail because Emigrant cannot establish legal or proximate cause; Ticor claims Emigrant's own acts break the chain of causation. Whether Emigrant can establish causation in its *prima facie* case for breach of contract is a separate question from whether Ticor has carried its burden in establishing this affirmative defense.

Viewing the evidence in the light most favorable to the nonmoving party, Emigrant, *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576–77 (6th Cir. 2004), the reasonableness of Emigrant's mitigation efforts presented a question for the factfinder and was not properly decided as a matter of law on summary judgment. Because this question is one for the factfinder, we need not address Emigrant's alternative argument that the failure to mitigate reduces, rather than precludes, recovery.

For these reasons, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.