BANK OF LANSING v STEIN, HINKLE, DAWE AND ASSOCIATES
ARCHITECTS, INC

Docket No. 78-1665. Submitted May 6, 1980, at Lansing.—Decided
   October 22, 1980.

    The Bank of Lansing brought an action against Stein, Hinkle,
   Dawe and Associates Architects, Inc., Morris H. Stein, and
   Richard C. Frank, alleging fraud and breach of duty. Defen-
   dants moved for summary and/or accelerated judgment, which
   motion was granted. The Court of Appeals reversed and re-
   manded the case for further proceedings. The matter was tried
   in the circuit court. A jury returned verdicts of no cause of
   action on both counts. Plaintiff moved for a new trial, which
   motion was denied, Ingham Circuit Court, James T. Kallman,
   J. Plaintiff appeals, alleging that the trial court abused its
   discretion by denying its motion for a new trial since the jury's
   verdicts were against the great weight of the evidence, that the
   trial court erred in allowing a question which called for a legal
   conclusion by witnesses, that the trial court's instructions on
   material misrepresentation were insufficient, and that the trial
   court erred in instructing the jury on determining the effect of
   an agreement among the parties and defendants' liability.
   *Held:*

    1. The trial court did not abuse its discretion in denying
plaintiff's motion for a new trial. Relevant testimony which was
presented was in sharp conflict, and the question of the credi-
bility of the witnesses was solely for the jury, whose verdict
properly was not second-guessed by the trial court.

    2. The question allowed was a mixed question of law and fact.
To arrive at the facts, legal assumptions were called for. The
popular meaning of the assumptions approximates the legal

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 5 Am Jur 2d, Appeal and Error § 887.
[2] 81 Am Jur 2d, Witnesses § 656.
[4] 31 Am Jur 2d, Expert and Opinion Evidence § 14.
[5-7] 31 Am Jur 2d, Expert and Opinion Evidence § 69.
[8, 9] 75 Am Jur 2d, Trial § 608.
[9] 75 Am Jur 2d, Trial § 588.
[10] 58 Am Jur 2d, New Trial § 29.

meaning. The witnesses did not express an opinion on the ultimate issue, and their answers did not usurp the province of the jury. Thus, their answers were not grounds for reversal.

3. The instruction on material misrepresentation given by the trial court was appropriate, expressing the substance of plaintiff's requested instruction. Plaintiff was not denied a fair trial thereby.

4. The trial court did not err in instructing the jury that it must decide the issue of plaintiff's intent to release defendants and the relationships among the various parties.

Affirmed.

1. APPEAL — NEW TRIAL — STANDARD OF REVIEW — COURT RULES.

A new trial may be ordered if the court, in its discretion, considers the verdict to be against the great weight of the evidence, and an appellate court will not interfere with a trial court's exercise of its discretion in ordering a new trial unless abuse thereof is so plain that, upon consideration of the facts upon which the trial judge acted, an unprejudiced person could say that there was no justification or excuse for the ruling (GCR 1963, 527.1[5]).

2. MOTIONS AND ORDERS — NEW TRIAL — CREDIBILITY OF WITNESSES — PROVINCE OF A JURY.

The question of the credibility of witnesses is solely for a jury's consideration where relevant testimony is in sharp conflict, and a jury's verdict should not be second-guessed by a trial judge in deciding a motion for a new trial.

3. APPEAL — NEW TRIAL — JUDICIAL DISCRETION — STANDARD OF REVIEW.

A trial judge is vested with large discretion in deciding a motion for a new trial grounded upon the allegation that a verdict is against the great weight of the evidence, and appellate courts will not interfere absent palpable abuse.

4. WITNESSES — LAY WITNESSES — OPINION TESTIMONY — RULES OF EVIDENCE.

Opinion testimony on ultimate issues by lay witnesses can be permitted by a trial court (MRE 701).

5. TRIAL — LAY WITNESSES — LEGAL CONCLUSIONS — COURTS.

An answer to a question posed by counsel which calls for a conclusion of a lay witness for which there is a legal standard may not be the subject of an opinion as to whether a person or

conduct measures up to that standard, and where such a question is asked, a trial court should deny an answer and instruct a jury as to the law, leaving the jury to draw its conclusion from the evidence.

6. WITNESSES — LEGAL CONCLUSIONS — POPULAR MEANING — LEGAL MEANING.

A question which calls for a conclusion by a witness as to whether a legal standard has been met may be allowed where the popular meaning of the words which would have legal significance is approximately the same as the legal meaning.

7. WITNESSES — FACTUAL TESTIMONY — LEGAL CONCLUSIONS — PROVINCE OF JURY.

The allowance of testimony by a witness to facts which would allow a jury to arrive at a legal conclusion does not usurp the province of the jury and is not grounds for reversal.

8. TRIAL — JURY INSTRUCTIONS — FORM OF INSTRUCTIONS.

A trial court need not grant requested instructions in the precise form submitted by attorneys; it is free to express the substance of a requested instruction in its own language.

9. TRIAL — JURY INSTRUCTIONS — ENTITLEMENT OF PARTIES — MODUS OF INSTRUCTION — COURT RULES.

Each party is entitled to have appropriate instructions submitted to a jury where evidence exists to support its theory of a case, but the modus of instruction is within the discretion of the trial judge (GCR 1963, 516).

10. MOTIONS AND ORDERS — NEW TRIAL — GROUNDS FOR DENIAL — COURT RULES.

A trial court, after receiving the verdict of a jury, should deny a motion for a new trial where no grounds are presented showing a material effect on the moving party's substantial rights (GCR 1963, 527.1).

*Loomis, Ewert, Ederer, Parsley, Davis & Gotting* (by *William D. Parsley, Phillip J. Birdsall* and *Kenneth W. Beall),* for plaintiff.

*Willingham, Coté, Hanslovsky, Griffith & Foresman, P.C.* (by *John L. Coté* and *Marianne E. Samper),* for defendants.

Before: CYNAR, P.J., and M. J. KELLY and T. GILLESPIE,* JJ.

T. GILLESPIE, J. In 1967, the Bank of Lansing agreed to loan $2,500,000 to Normandy Meadows, Inc. to construct an apartment complex. The principal stockholder and president of Normandy Meadows was James Duncan. At the inception Mr. Duncan was associated with Glenn Harris, who owned Harris Construction Co. Mr. Harris withdrew from the project shortly after a construction agreement was signed, and construction was assumed by Associated Builders, a company formed by Duncan for the purpose of building Normandy Meadows complex.

After the bank loan was arranged, Normandy Meadows hired the architectural firm of Frank and Stein Associates, Inc. to inspect the construction progress and to review and approve periodic disbursements of the loan. The agreement with the bank required such architect's approval. Upon receipt of such approval, Associated could draw on up to 90% of the work certified as complete. The architectural duties were subsequently taken over by Stein, Hinkle, Dawe and Associates, the successor to Frank and Stein.

Duncan's projected cost in 1967 was $2,630,000, of which he was to furnish the land valued at $130,000 and used the $2,500,000 to build 15 apartment buildings and a community building. It appears that immediately the $130,000 was paid from the bank loans instead of Duncan's funds. It also appears that the bank had, at the time Duncan was representing to the bank that the project could be built for $2,630,000, an independent ap-

* Circuit judge, sitting on the Court of Appeals by assignment.

praisal of the project, which estimated the cost of the project at $3,600,000.

Between December 6, 1967, and July 28, 1968, there were nine requests for draws, and $1,259,397 was approved by either defendant Morris Stein or defendant Richard Frank, principals and officers of the architectural firm. At the latter date Frank and Stein's services were terminated. The bank took over the project and partially completed it and eventually sold at a loss which the bank estimated to be between $660,000 and $683,000.

On January 10, 1973, the bank filed a complaint containing one count alleging fraud. This complaint was amended on April 26, 1973, to add a second count alleging breach of duty. Trial was set for May 19, 1975.

On the day of trial, the trial court granted defendants' motion for summary and/or accelerated judgment, based on an alleged release by plaintiff of Duncan and Normandy Meadows. In an unpublished per curiam opinion, this Court reversed the trial court's decision and remanded the case for further proceedings. A jury trial was held January 9—February 2, 1978. Verdicts of no cause of action were returned on both counts. Plaintiff moved for a new trial. After a hearing on April 13, 1978, the trial court declined to grant plaintiff's motion. Plaintiff now appeals as of right.

Plaintiff first argues that the jury's verdicts were so against the great weight of the evidence that the trial court abused its discretion by declining to grant a new trial. In *Carpenter v Cleveland,* 32 Mich App 213, 215; 188 NW2d 248 (1971), the Court said:

"A new trial may be ordered if the court in its discretion considers the verdict to be against the great

weight of the evidence. GCR 1963, 527.1(5). *Davis v Belmont Creamery Co* (1937), 281 Mich 165. An appellate court will interfere with the trial court's exercise of its discretion in this regard only if abuse of its discretion is so plain that upon consideration of the facts upon which the trial judge acted an unprejudiced person can say that there was no justification or excuse for the ruling made. *Patzke v Chesapeake & O R Co* (1962), 368 Mich 190."

There were a number of reasons why the jury could have found for the defendants. There was evidence relating to thefts of material, increasing costs during construction, a shutdown and restarting of the project which increased expenses, and the developer, James Duncan, used $130,000 to buy the land which he had agreed to furnish, all of which contributed to plaintiff's losses, but none of which were the fault of the defendants.

The case was tried ten years after the events. Witnesses had difficulty in remembering particulars, and the detailed documentary record had been partially lost. The jury could have reasonably concluded that the evidence was too confused to support a verdict for the plaintiff.

The jury could well have believed that justice demanded release of the defendants after plaintiff released Duncan and Normandy Meadows, who originated the claims which the defendants were alleged to have overcertified.

The plaintiff's expert witness testified that variations of 15% by architects on estimates of completion are not uncommon. The jury may have believed from the evidence that there was no fraud or breach of contract, even though some items may have been overcertified, so long as the total certification was within contract limits.

These reasons, among others, would have ren-

dered it improper for the trial judge to do other than what he did: accept the verdict and deny a new trial.

In a case such as this one, where relevant testimony is in sharp conflict, the question of credibility of witnesses is solely for the jury, whose verdict should not be second-guessed by the judge.

It is the settled law in this state that, upon deciding a motion for a new trial grounded upon the allegation that the verdict is against the great weight of the evidence, the trial judge is vested with large discretion, and appellate courts will not interfere unless there is palpable abuse. *Fera v Village Plaza, Inc,* 396 Mich 639, 648; 242 NW2d 372 (1976), *Lemanski v Ford Motor Co,* 82 Mich App 244, 248; 266 NW2d 775 (1978), *Goodman v Stafford,* 20 Mich App 631; 174 NW2d 593 (1969).

On the facts in this case, the trial court did not abuse its discretion.

The second argument pressed by the bank is that, during trial, the judge allowed a question to be asked on cross examination of several of plaintiff's witnesses substantially as follows:

"Do you have any facts or any knowledge that would support an allegation in this case that Mr. Stein was guilty of fraud and misrepresentation?"

In each instance the counsel for plaintiff objected, but the question was allowed. MRE 701, which permits lay opinion testimony on ultimate issues, did not take effect until March 1, 1978, approximately one month after this trial concluded. The bank argues that such question called for a legal conclusion inasmuch as the witness would have to know the elements of fraud and misrepresentation to answer the question.

The question was a mixed question of law and fact. The question called for "facts", but to arrive at what such "facts" were, certain legal assumptions were called for. If the question calls for a conclusion for which there is a legal standard, it may not be the subject of opinion as to whether or not the person or conduct measures up to that standard. When a question is asked as to whether a witness believes a legal standard has been met, the court must deny the answer and instruct the jury as to the law, and the jury must draw its conclusion from the evidence. *Halligan v Lone Tree Farmers Exchange,* 230 Iowa 1277, 1283; 300 NW 551 (1941). An exception is sometimes allowed where the popular meaning is approximately the same as the legal meaning. *McClellan v French,* 246 Ark 728; 439 SW2d 813 (1969) (where the witness was allowed to testify that a doctor was not guilty of "malpractice"), *Groce v Fidelity General Ins Co,* 252 Or 296; 448 P2d 554 (1968) (where a witness was allowed to testify to "good faith" of an insurer). Here, the witness would well know the popular meaning of fraud and misrepresentation which approximates the legal definition.

In any case, the witnesses here did not express an opinion on the ultimate issue. They all answered "no" to the question. Since these were plaintiff's witnesses, probably some of them were of the opinion that fraud had taken place. However, they were asked to testify to *facts* suggesting fraud and misrepresentation and could give no answer. The answers did not usurp the province of the jury and were not grounds for reversal.

Plaintiff next argues that the trial court's instructions on material misrepresentation were insufficient. Plaintiff requested the following instruction:

"15. A representation is anything which occurs as a result of the action or conduct of the Defendants, and which is sufficient to create upon the mind a distinct impression of facts conducive to action. A statement may be a representation whether or not it may constitute a warranty, guaranty or certification. Withholding of material information which results in a false impression also constitutes a material misrepresentation."

The court instructed the jury in part:

"The law of the State of Michigan is that representation within the meaning of the law of fraud is anything short of a warranty which is produced from the action or conduct of the parties charged and which is sufficient to create upon the mind a distinct impression of facts and conducive to action."

The instruction given by the court is the definition of a material representation first appearing in *Groening v Opsata,* 323 Mich 73, 83-84; 34 NW2d 560 (1948), and continued in *Sullivan v Ulrich,* 326 Mich 218, 228; 40 NW2d 126 (1949), and in *Hadad v Lewis,* 382 F Supp 1365, 1369 fn 7 (ED Mich, 1974).

The instruction given by the court is more succinct than desired by the plaintiff, but is an instruction which has been used to cover any "action or conduct" resulting in false impression causing a person to act to their detriment, including withholding of information.

The court need not grant requested instructions in the precise form submitted by the attorneys, but is free to express the substance of the request in its own language. So long as the evidence exists to support the theory of the case, each party is entitled to have appropriate instructions submitted to the jury, but the modus of so doing is in the discretion of the trial judge. GCR 1963, 516, 2

Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 565.

In this instance, the language, while succinct, was appropriate, and the plaintiff was not denied a fair trial thereby. *Taylor v Hannon-Colvin Post 180 of American Legion,* 6 Mich App 398; 149 NW2d 210 (1967).

The last issue that the bank raises on appeal centers around the actions of the bank on March 4, 1969. On that date, the bank entered into an agreement with Normandy Meadows and James Duncan to attempt to protect the funds previously loaned. This agreement provided that the bank would loan funds only to complete nine buildings already underway. At the same time, Normandy Meadows was to deposit a deed to the project, naming the bank as grantee, with Burton Abstract and Title Co.

The agreement further provided that unless the mortgage held by the bank was discharged by August 30, 1970, the deed would be recorded. Paragraph 9 of the agreement of March 4, 1969, provided that if the deed were recorded, vesting ownership in the bank, Normandy Meadows and Duncan would be released, and the bank would waive its rights to a deficiency. The mortgage was not discharged by August 30, 1970, and the bank became the owner of the project.

Thereafter, the bank began action on January 10, 1973, against the architectural firm and its two principals, alleging fraudulent misrepresentation in status reporting on which the bank claims to have relied which resulted in its overadvancing funds for the project.

After preliminary matters were disposed of over a period of two years, the defendants, on the morning of trial in May, 1975, moved for acceler-

ated and/or summary judgment on the grounds that the release of Normandy Meadows operated as a release of the defendants who were employed by Normandy Meadows. The court granted that motion, and the matter was appealed to this Court.

This Court found that the relationship of Normandy Meadows and the architects was not necessarily a principal-agent relationship, which the trial court had assumed, but was a fact question which should have been put to the jury. This Court remanded the case to the trial court to determine the relationship of the architectural firm and Normandy Meadows.

During trial, the bank requested the following instruction:

"27. There has been testimony in this case that Bank of Lansing released the principals to the Normandy Meadows, Inc. loan from liability to it for losses sustained by the Bank on the Normandy Meadows project. The Plaintiff has no legal obligation to sue Mr. Duncan or the other principals before attempting to collect from those architects for any fraudulent misrepresentations or breaches of contract by the architects. Therefore, whether Bank of Lansing may or may not have had legal grounds to sue Mr. Duncan or the other principals and whether it gave up any such right shall not influence your verdict in this case."

The court instructed the jury:

"In this case there has been introduced into evidence Exhibit 46 which is an agreement entered into on March 4, 1969, between the Bank of Lansing and Mr. Duncan and other parties. It is for you to decide, based upon the evidence and the statements contained in said agreement whether or not the bank intended to release the Defendants. If you find that the Defendants were released by the terms of said agreement then you would

return a verdict of no cause of action on their behalf. It is up to you the jury to determine what the relationship is between the various parties were *[sic]* in order to determine their duties and obligations to each other."

The court later responded to a question from the jury:

"The next question you asked was regarding Plaintiff's Exhibit 46 and the question was, since Normandy Associated et cetera [was] absolved from liability by this document does this also extend to Stein since he worked for Normandy Associates? And the answer I'm going to instruct you on that is that issue is for you to decide. Okay, with that you can return to your deliberations."

This Court remanded the case to the trial court to put to the jury the fact questions of the relationship of Normandy Meadows and the defendants and the existence and scope of any contract of which the plaintiff may have been beneficiary. The trial court followed this Court's instructions. The court, after receiving the verdict of the jury, had no alternative except to deny a new trial in absence of any grounds set forth in GCR 1963, 527.1. *Humphrey v Bay Refining Co,* 16 Mich App 394; 168 NW2d 314 (1969).

The decision of the trial court is affirmed.