STEIN v CONTINENTAL CASUALTY COMPANY

Docket No. 78-5270. Submitted May 5, 1981, at Lansing.—Decided
    October 20, 1981. Leave to appeal applied for.

In 1964, Morris Stein and Richard Frank began an architectural
    and engineering business. Between 1964 and 1969, they con-
    tracted with the Mourer-Foster Insurance Agency for a "claims
    made" professional liability insurance policy with defendant
    Continental Casualty Company. Under a "claims made" policy,
    the insured party must maintain continuous coverage in order
    to have protection against liability for malpractice if the claim
    is not made in the same policy year in which the alleged
    negligent act occurred. Because of a lack of business between
    1969 and 1971, they did not continue their insurance policy. In
    1971, they renewed their contract with the Mourer-Foster
    Agency for defendant's "claims made" professional liability
    insurance policy. According to Stein, they were not informed of
    the consequences of cancelling their insurance in 1969, nor
    were they advised that a "prior acts" endorsement was avail-
    able when they renewed their insurance in 1971.

On January 23, 1973, while their insurance was in effect,
    Bank of Lansing commenced an action against them and oth-
    ers, alleging fraud and breach of duty in doing certain profes-
    sional work in 1967 and 1968, a period in which their profes-
    sional liability insurance was in effect. Continental Casualty

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 43 Am Jur 2d, Insurance § 173.
    Duty and liability of insurance broker or agent to insured with
    respect to procurement, continuance, terms, and coverage of
    insurance policies. 29 ALR2d 171.
[2] 5 Am Jur 2d, Appeal and Error §§ 839, 841.
[3] 43 Am Jur 2d, Insurance §§ 358, 359.
    Reformation of property insurance policy to correctly identify prop-
    erty insured. 25 ALR3d 1232.
    Reformation of property insurance policy to correctly identify per-
    son or interest insured. 25 ALR3d 580.
[4] 22 Am Jur 2d, Damages §§ 195-198.
    38 Am Jur 2d, Fright, Shock, and Mental Distrubance §§ 33, 34.
[5] 75 Am Jur 2d, Trial §§ 463-465.
[6] 22 Am Jur 2d, Damages §§ 26, 29.

refused to defend the suit, claiming that the failure to continue the insurance in 1969 and 1970 released it from any duty regarding the suit. Frank and Stein and others brought an action in the Ingham Circuit Court against Continental Casualty seeking a declaratory judgment that defendant was obligated to defend the Bank of Lansing suit and that certain provisions in the insurance policy were illegal and contrary to public policy and for actual and exemplary damages. The court, Thomas L. Brown, J., proposed special findings of fact to the jury. With respect to the 1968 insurance policy, the jury found that plaintiffs were not warned by defendant's agent or the policy that cancellation of their insurance would lead to the loss of protection from their prior policies. The jury also found that plaintiffs would not have cancelled their policy if they had known the consequences. As to the 1971 policy, the jury found that Mourer-Foster, an authorized agent of defendant, did not inform plaintiffs of defendant's prior acts endorsement which was available and that plaintiffs would have purchased the endorsement if they had been aware of its availability. Finally, the jury found Stein entitled to $55,000 and Frank entitled to $40,000 for damages arising from mental anxiety.

On the declaratory relief requests, the court found that defendant had a duty to defend plaintiffs in the suit filed by Bank of Lansing and the provisions of the insurance policy were not contrary to public policy and were not ambiguous. Furthermore, the court found defendants liable for the attorney fees expended by plaintiffs in defense of the Bank of Lansing action. The court retained jurisdiction so that it could determine if any future damages should be awarded. Defendant appealed. *Held:*

1. Where a special relationship exists with an insured, an agent has a duty to advise a client about the adequacy of a policy's coverage. The finding that plaintiffs had a special relationship with the Mourer-Foster Insurance Agency, an agent of defendant, is not clearly erroneous.

2. An insurance policy may be reformed where, through the fault of the insurer, the policy does not cover the person or property intended. In 1969, plaintiffs informed Mourer-Foster that they could not afford malpractice insurance, but Mourer-Foster failed to tell plaintiffs that cancellation of the policy would leave plaintiffs without malpractice coverage. When plaintiffs decided to renew their malpractice insurance, they went to Mourer-Foster asking to purchase a policy covering all their liabilities. Although Mourer-Foster knew that plaintiffs' potential liabilities prior to 1971 were not covered because of

the policy cancellation in 1969, it did not inform plaintiffs that a prior acts endorsement was available which would extend the malpractice insurance coverage to the prior acts. Because plaintiffs were unaware of the prior acts endorsement, they failed to purchase it and were not covered for claimed liability arising out of their 1968 transactions with Bank of Lansing. The silence of Mourer-Foster, defendant's agent, induced plaintiffs' mistake and justifies a reformation of the insurance policy to cover acts of malpractice prior to 1971.

3. Frank and Stein are not entitled to damages for mental distress.

4. The court did not err in retaining jurisdiction to determine future damages.

Affirmed in part and reversed in part.

1. INSURANCE — AGENT'S DUTY TO CLIENT.

An insurance agent does not generally have a duty to advise a client about the adequacy of a policy's coverage; however, where a special relationship with the insured exists, an agent has a duty to advise the insured and is liable for breach of that duty.

2. APPEAL — FINDINGS OF FACT — BENCH TRIAL.

A finding of fact by a court sitting in a bench trial is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made (GCR 1963, 517.1).

3. REFORMATION OF INSTRUMENTS — CONTRACTS — INSURANCE.

Courts may reform a contract where there has been a mutual mistake made by the parties or where there is a mistake by one party and fraud or inequitable conduct by the other; an insurance policy may be reformed where, through the fault of the insurer, the policy does not cover the person or property intended.

4. DAMAGES — MENTAL ANGUISH — CONTRACTS.

Damages for mental and emotional anguish as a result of a breach of a commercial contract are not recoverable absent evidence that they were within the contemplation of the parties at the time of the making of the contract.

5. TRIAL — JURY — DIRECTED VERDICT.

A trial judge must exercise extreme caution in removing an issue from the jury, and the right to have a jury pass on questions of

fact must be protected even when only scant evidence is presented.

6. JURISDICTION — FUTURE DAMAGES — RETENTION OF JURISDICTION
— COURT RULES.

A trial court may retain jurisdiction to determine future damages after granting a judgment for declaratory relief (GCR 1963, 521.6).

*Willingham, Coté, Hanslovsky, Griffith & Foreman, P.C.* (by *John L. Coté, John A. Yeager* and *Frederick M. Baker, Jr.),* for plaintiffs.

*Reid, Reid, Mackay, Emery & DeVine, P.C.* (by *Fred C. Newman),* for defendant.

Before: M. J. KELLY, P.J., and BRONSON and R. M. DANIELS,* JJ.

M. J. KELLY, P.J. Plaintiffs commenced this action seeking a judgment declaring that defendant was obligated under certain provisions of an architects and engineers professional liability insurance policy to defend a suit brought against plaintiffs by Bank of Lansing and to pay any judgment that might be rendered in favor of the Bank of Lansing. See *Bank of Lansing v Stein, Hinkle, Dawe & Associates Architects, Inc,* 100 Mich App 719; 300 NW2d 383 (1980). The defendant insurance company appeals as of right from a judgment and order entered in favor of plaintiffs.

In 1964, plaintiffs Richard Frank and Morris Stein began an architectural and engineering business. Between 1964 and 1969, plaintiffs contracted with the Mourer-Foster Insurance Agency for a "claims made" professional liability insurance policy with defendant Continental Casualty Company. Under a "claims made" policy, the insured party

* Circuit judge, sitting on the Court of Appeals by assignment.

must maintain continuous coverage in order to have protection against liability for malpractice if the claim is not made in the same policy year in which the alleged negligent act occurred. Because of a lack of business between 1969 and 1971, plaintiffs did not continue their insurance policy. In 1971, they renewed their contract with the Mourer-Foster Agency for defendant's "claims made" professional liability insurance policy. According to Stein, plaintiffs were not informed of the consequences of cancelling their insurance in 1969, nor were they advised that a "prior acts" endorsement was available when they renewed their insurance in 1971.

While plaintiffs' 1967 and 1968 insurance policy was in effect, they contracted with Mr. Jim Duncan to perform professional services during Duncan's construction of the Normandy Meadows project including approval of requests for contractors draws from the lender, the Bank of Lansing. From December, 1967, through July, 1968, plaintiffs inspected the construction site on a monthly basis and signed certificates upon which the Bank of Lansing paid the contractor. On January 10, 1973, the Bank of Lansing filed a complaint against plaintiffs alleging fraud. The complaint was amended on April 26, 1973, adding a second count alleging breach of duty. When plaintiffs informed Continental about the suit, it refused to defend plaintiffs, claiming that plaintiffs' failure to continue the insurance policy in 1969 and 1970 released Continental from any duty to defend plaintiffs.

On May 2, 1973, plaintiffs commenced this action. On March 23, 1978, they filed their third amended complaint seeking in Count I a declaratory judgment that defendant was obliged to de-

fend plaintiffs in the Bank of Lansing action, damages for defendant's refusal to defend, and exemplary damages for Frank and Stein. Count II of the complaint sought a declaratory judgment that certain provisions of defendant's insurance policy, including the continuous coverage provision, were illegal and contrary to public policy. Finally, in Count III, plaintiffs alleged that the continuous coverage provision of the policy was misleading and ambiguous and that defendant failed to advise them of the consequences of failing to maintain continuous coverage. Plaintiffs prayed for declaratory relief, actual damages and exemplary damages for Frank and Stein.

During trial, the court submitted proposed special findings of fact to the jury. With respect to the 1968 insurance policy, the jury found that plaintiffs were not warned by defendant's agent or the policy that cancellation of their insurance would lead to the loss of protection from their prior policies. The jury also found that plaintiffs would not have cancelled their policy if they had known the consequences. As to the 1971 policy, the jury found that Mourer-Foster, an authorized agent of defendant, did not inform plaintiffs of defendant's prior acts endorsement which was available and that plaintiffs would have purchased the endorsement if they had been aware of its availability. Finally, the jury found plaintiff Stein entitled to $55,000 and plaintiff Frank entitled to $40,000 for damages arising from mental anxiety.

On the declaratory relief requests, the court found that defendant had a duty to defend plaintiffs in the suit filed by Bank of Lansing. The court also found that the provisions of the insurance policy were not contrary to public policy and were not ambiguous. Furthermore, the court found de-

fendants liable for the attorney fees expended by plaintiffs in defense of the Bank of Lansing action. The court retained jurisdiction so that it could determine if any future damages should be awarded. When defendant's motion for a new trial was denied, it brought this appeal, raising a number of issues.

I

On appeal, defendant argues that the trial court erred when it found that defendant had a duty to warn plaintiffs of the adverse consequences of cancelling their insurance policy. Defendant also contends that it did not have a duty to inform plaintiffs of the existence of a prior acts endorsement when plaintiffs reapplied for insurance in 1971. According to defendant, the trial court erred by reforming the insurance policy based upon defendant's alleged breach of duty. Plaintiffs counter by arguing that the court properly found defendant had a duty to warn plaintiffs and defendant's breach of this duty prevented defendant from claiming the coverage exclusion contained in the insurance policy.

An insurance agent does not generally have an affirmative duty to advise a client about the adequacy of a policy's coverage. *Palmer v Pacific Indemnity Co,* 74 Mich App 259, 267; 254 NW2d 52 (1977), *Hardt v Brink,* 192 F Supp 879, 880 (WD Wash, 1961). However, where a special relationship exists with the insured, an agent has the duty to advise the insured. *Palmer, supra,* 267, *Hardt, supra,* 881. In *Hardt,* defendant insurance agent had procured all of plaintiff's insurance for ten years. Plaintiff, a manufacturer, bought a fire insurance policy which excluded any buildings leased by plaintiff. When a building leased by

plaintiff was damaged by fire, plaintiff was unable to recover under the insurance policy and brought an action against the agent. The court found that the agent had a duty to advise stating:

"Whether or not an additional duty is assumed will depend upon the particular relationship between the parties. Each case must be decided on its own peculiar facts. The law here involved is not particularly startling nor is it necessarily an extension over previous cases. This is an age of specialists and as more occupations divide into various specialties and strive towards 'professional' status the law requires an ever higher standard of care in the performance of their duties. Restatement Torts, 2d (Tentative Draft No 4, 1959), § 299A." *Id.,* 881.

The existence of a special relationship is a question of fact. *Palmer, supra,* 267. Where the duty to advise has been breached, the insurance agent is liable for any damages resulting from the breach. *Hardt, supra,* 882.

In the instant case, the evidence established that the Mourer-Foster Insurance Agency had handled all of plaintiffs' insurance needs, including their malpractice insurance, for 10 years. The evidence also established that Mourer-Foster was an agent of defendant, Continental. From 1962 until 1969, plaintiffs bought their malpractice insurance from Continental through Mourer-Foster. When plaintiffs elected not to renew their malpractice insurance, Mourer-Foster failed to inform them of the consequences of their failure to renew. In 1971, plaintiffs decided to renew their malpractice insurance asking Mourer-Foster to obtain a policy which would cover them against all liabilities. Mourer-Foster insured plaintiffs with Continental but failed to inform plaintiffs of Continental's prior acts endorsement which would have pro-

tected them in the Bank of Lansing action. The trial court concluded that a special relationship existed between plaintiffs and defendant and that a question of fact was presented whether defendant, through its agent, Mourer-Foster, failed to properly advise plaintiffs. The jury found that plaintiffs were neither warned of the consequences of cancelling the 1969 policy nor informed of the availability of the prior acts endorsement in 1971.

GCR 1963, 517.1 provides that findings of fact made by a trial court shall not be set aside unless clearly erroneous. A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976). In this case, the trial court's findings of fact were not clearly erroneous.

Defendant also argues that the trial court rewrote the insurance policy. Insurance policies, like contracts, are agreements between the parties which the courts interpret and enforce. *Eghotz v Creech,* 365 Mich 527, 530; 113 NW2d 815 (1962). Courts can neither make a new agreement for the parties nor, by addition, give it a meaning contrary to its express and unambiguous terms. *Bonney v Citizens' Mutual Automobile Ins Co,* 333 Mich 435, 438-439; 53 NW2d 321 (1952), *Britton v John Hancock Life Ins Co,* 30 Mich App 566, 569; 186 NW2d 781 (1971). However, courts may reform a contract where there has been a mutual mistake made by the parties or where there is a mistake by one party and fraud or inequitable conduct by the other. *DeGood v Gillard,* 251 Mich 85, 88; 231 NW 102 (1930), *Hammel v United States Fidelity & Guaranty Co,* 246 Mich 251, 254; 224 NW 337

(1929). An insurance policy may also be reformed where, through the fault of the insurer, the policy does not cover the person or property intended. *Heath Delivery Service v Michigan Mutual Liability Co,* 257 Mich 482, 486; 241 NW 191 (1932).

In this case, the trial court reformed the insurance policy because Continental failed to inform plaintiffs of the consequences of cancelling their policy and the availability of a prior acts endorsement. It appears that whether a failure to inform is a basis for reformation of an insurance policy is a question of first impression. In *Portella v Sonnenberg,* 74 NJ Super 354; 181 A2d 385 (1962), plaintiff sued Sonnenberg when she fell into an open elevator shaft at his store. In a third-party action, Sonnenberg sued the Travelers Insurance Company and its agent, from whom Sonnenberg purchased a bodily injury liability policy which contained an elevator exclusion, for reformation of the insurance contract. After the court found that Travelers' agent was aware of the elevator and knew Sonnenberg expected coverage for accidents occurring because of the elevator, the court stated:

"But even if we were to conclude that Maginnis had in mind from the start that he would not give Sonnenberg elevator coverage, his conduct in remaining silent about the elevator exclusion after inspecting the store with full knowledge of the insured's request for and expectation of total coverage would constitute such conduct in inducing the mistake as would justify granting reformation even if the mistake were unilateral. See *Volker v Connecticut Fire Ins Co,* 22 NJ Super 314, 320-321 [91 A2d 883] (App Div 1952); Restatement Contracts, § 505 (1932).

"Even if Maginnis did not know of the existence of an elevator upon the premises, since he knew Sonnenberg asked for and expected to receive complete coverage, it was Maginnis' duty, before issuing a policy excluding

elevators, to (1) inquire whether there were elevators on the premises, or (2) tell Sonnenberg that elevators were not covered, or (3) write the policy so plainly that an examination thereof would bring home the exclusion to Sonnenberg. *Merchants Indemnity Corp v Eggleston,* 37 NJ 114, 124 [179 A2d 505] (1962); *Bauman v Royal Indemnity Co,* 36 NJ 12 [174 A2d 585] (1961). Here none of the three things was done.

"Maginnis made no inquiry of Sonnenberg or Baron whether there was an elevator on the premises, and Maginnis said nothing which gave the insured the slightest indication that elevator and non-elevator portions needed to be distinguished or that elevators were to be excluded from the policy. As the court said in *Merchants Indemnity Corp v Eggleston, supra,* 124, 'It would be unjust to visit the loss upon an insured whose good faith is unassailable, and to absolve a carrier which could have asked, but did not, for the facts it regards as material.' " *Id.,* 359-360.

The court concluded by reforming the insurance contract to include coverage for accidents involving elevators in Sonnenberg's store. *Id.,* 362.

Between 1962 and 1969, plaintiffs had purchased their malpractice insurance from Continental through Mourer-Foster. In 1969, plaintiffs informed Mourer-Foster that they could not afford malpractice insurance, but Mourer-Foster failed to tell plaintiffs that cancellation of the policy would leave plaintiffs without malpractice coverage. When plaintiffs decided to renew their malpractice insurance, they went to Mourer-Foster asking to purchase a policy covering all their liabilities. Although Mourer-Foster knew that plaintiffs' potential liabilities prior to 1971 were not covered because of the policy cancellation in 1969, it did not inform plaintiffs that a prior acts endorsement was available which would extend the malpractice insurance coverage to the prior acts. Because plaintiffs were unaware of the prior acts endorse-

ment, they failed to purchase it and were not covered for claimed liability arising out of their 1968 transactions with Bank of Lansing. The silence of Mourer-Foster, defendant's agent, induced plaintiffs' mistake and justifies a reformation of the insurance policy to cover acts of malpractice prior to 1971.

## II

Defendant also objects to the award of damages to the individual plaintiffs arising from damages for mental distress. Initially, defendant argues that plaintiffs' pleadings were not sufficiently specific to apprise defendant that plaintiffs were seeking damages for mental distress.

GCR 1963, 111.1, states in part that a complaint, to be sufficient, shall contain:

"[A] statement of the facts without repetition upon which the pleader relies in stating his cause of action with such specific averments as are necessary reasonably to inform the adverse party on the nature of the cause he is called upon to defend."

The purpose of a complaint is to give notice of the nature of the claim sufficient to permit the opposite party to take a responsive position. *Simonson v Michigan Life Ins Co,* 37 Mich App 79, 83; 194 NW2d 446 (1971).

In plaintiffs' third amended complaint, they allege that plaintiffs purchased the professional liability insurance policy to alleviate mental concerns and emotional anguish. The complaint further alleged that defendant's breach of the insurance contract caused plaintiffs to suffer mental and emotional anguish. These allegations gave sufficient notice to defendant, enabling them to re-

spond to plaintiffs' allegations of damages for mental and emotional anguish. Plaintiffs' complaint satisfies the requirements of GCR 1963, 111.1.

Defendants next assert that damages for mental and emotional distress are not recoverable for breach of an insurance contract. Under the rules of *Hadley v Baxendale,* 9 Exch 341; 156 Eng Rep 145 (1854), the damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made. Generally, damages for mental distress, arising from a breach of contract, are not recoverable.

An exception to this general rule was announced in *Stewart v Rudner,* 349 Mich 459; 84 NW2d 816 (1957). In *Stewart,* plaintiff brought suit on a breach of contract alleging defendant doctor failed to deliver plaintiff's child by Caesarean section, resulting in the child's death. Defendant argued that plaintiff could not recover damages for her mental and emotional anguish but the court allowed recovery stating:

"When we have a contract concerned not with trade and commerce but with life and death, not with profit but with elements of personality, not with pecuniary aggrandizement but with matters of mental concern and solicitude, then a breach of duty with respect to such contracts will inevitably and necessarily result in mental anguish, pain and suffering. In such cases the parties may reasonably be said to have contracted with reference to the payment of damages therefor in event of breach. Far from being outside the contemplation of the parties they are an integral and inseparable part of it." *Id.,* 471.

The reasoning announced in *Stewart, supra,* was used by this Court to allow a claim for damages for mental distress for breach of an insurance

contract. *Palmer, supra,* 266. However, in *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980), plaintiff, citing *Stewart,* sought damages for mental distress arising from the breach of a disability insurance contract. The Court rejected his claim stating:

"Insurance contracts for disability income protection do not come within the reach of *Stewart.* Such contracts are commercial in nature; they are agreements to pay a sum of money upon the occurrence of a specified event, *Secor v Pioneer Foundry Co,* 20 Mich App 30, 35; 173 NW2d 780 (1969); 14 Michigan Law & Practice, Insurance, § 71, p 50. The damage suffered upon the breach of the agreement is capable of adequate compensation by reference to the terms of the contract. We recognize that breach of the insurance contract, as with almost any agreement, results in some annoyance and vexation. But recovery for those consequences is generally not allowed, absent evidence that they were within the contemplation of the parties at the time the contract was made. 22 Am Jur 2d, Damages, § 64, p 97. See, also, *Scottish Union & National Ins Co v Bejcy,* 201 F2d 163, 166 (CA 6, 1953)." *Id.,* 416-417.

Plaintiffs, citing *Miholevich v Mid-West Mutual Auto Ins Co,* 261 Mich 495; 246 NW 202 (1933), argue that the rule stated in *Kewin* is inapplicable in this case because the insurance contract required defendant to negotiate or pay a third party. *Miholevich* involved an automobile collision liability insurance policy issued to the plaintiff by defendant. Under the contract, the defendant promised to satisfy any judgment rendered against the plaintiff but when a judgment was obtained defendant wilfully neglected to satisfy it resulting in the plaintiff's imprisonment for six days. The plaintiff sued defendant for breach of contract and for his arrest and confinement. The Court found that

damages arising from the plaintiff's arrest were within the contemplation of the parties when they entered into the contract and allowed the plaintiff to recover damages for mental distress. *Id.,* 499.

We find the reasoning of the Supreme Court in *Kewin* applicable in this case. This was a contract of a commercial nature in which defendant promised to defend plaintiffs if they were sued for malpractice. Plaintiffs' damages were not comparable to the loss of a child as in *Stewart* or imprisonment for six days as in *Miholevich.* Furthermore, the defendant's breach of the contract was not wilful as in *Miholevich.* Finally, plaintiffs are adequately compensated by requiring defendant to pay plaintiffs' attorney fees arising out of the Bank of Lansing action. Therefore, the trial court's award of damages for mental distress to plaintiffs Frank and Stein is reversed. See, also, *Jerome v Michigan Mutual Auto Ins Co,* 100 Mich App 685; 300 NW2d 371 (1980), *Liddell v DAIIE,* 102 Mich App 636; 302 NW2d 260 (1981).

## III

A number of other issues are raised by defendant. First, Continental claims that the trial court erred when it failed to instruct the jury on the question of attorney fees. To preserve an objection to jury instructions, the party objecting must make a request for a jury instruction before the instructions are given to the jury and must object to the alleged error after the jury has been instructed. *Veal v Spencer,* 53 Mich App 560, 565; 220 NW2d 158 (1974).

In this case, defendant never requested that the jury be instructed on attorney fees. Furthermore, on September 5, 1978, two days prior to trial, defendant moved to have the case stricken from

the jury docket claiming a jury trial was improper in this case. Then, on the day the jury was instructed, defendant moved to have the case taken from the jury. Finally, after the jury was instructed, defendant did not object to the trial court's failure to give an instruction concerning attorney fees. Defendant has failed to preserve this issue because it did not request an instruction and it failed to object to a lack of instructions on the issue of attorney fees.

Defendant also argues that the trial court erred when it allowed the jury to decide if plaintiffs would have purchased the prior acts coverage had they known about it. According to defendant, plaintiffs failed to introduce evidence which supported sending this issue to the jury. Prior to evidence going to the jury, the trial court must determine if there is any evidence upon which a jury could find a verdict supporting a particular issue. *In re Potts' Estate,* 304 Mich 47, 53; 7 NW2d 217 (1942). A trial judge must exercise extreme caution before removing an issue from the jury and must allow the jury to decide the issue even when only scant evidence is presented. *Miracle Boot Puller Co, Ltd v Plastray Corp,* 57 Mich App 443, 446; 225 NW2d 800 (1975).

During the trial, plaintiffs adduced testimony that they requested defendant to provide them with professional liability insurance. Defendant's agent failed to inform plaintiffs that a prior acts endorsement was available which would protect plaintiffs for prior acts not covered by the 1971 insurance policy. Furthermore, defendant's agent failed to inform plaintiffs that the 1971 insurance policy did not cover their prior acts because they had cancelled their policy in 1969. Finally, the testimony established that plaintiffs requested an

insurance policy which would cover all their liabilities. The evidence presented at trial, when taken in a light most favorable to plaintiffs, did support the trial court's decision to send the issue to the jury.

Defendant's last claim of error is based upon the trial court's retention of jurisdiction. At the end of the trial, the court stated that it was retaining jurisdiction pursuant to GCR 1963, 521.6 for the purpose of assessing damages based upon attorney fees incurred by plaintiffs in defense of the Bank of Lansing action. According to defendant, GCR 1963, 521.6 does not allow a trial court to retain jurisdiction to determine future damages.

GCR 1963, 521.6 states:

"Other Relief. Further necessary or proper relief based on a declaratory judgment may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by the declaratory judgment."

After entry of judgment for declaratory relief, further relief, such as damages or an injunction, may be granted, if necessary or proper, against any adverse party whose rights were determined by the declaratory judgment. 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 690. The power to issue declaratory relief is within the trial court's discretion. *13-Southfield Associates v Dep't of Public Health,* 82 Mich App 678, 687; 267 NW2d 483 (1978). In this case, the trial court did not abuse its discretion when it retained jurisdiction to decide an issue of plaintiffs' attorney fees where the attorney fees could not be determined until the action brought by Bank of Lansing had terminated.

The judgment on the jury verdicts for damages arising from mental anxiety in favor of each plaintiff is reversed. The trial court is affirmed in all other respects. No costs.