Jerome **TRUPIANO** and Jenny Trupiano, Appellants–Plaintiffs,

v.

**CINCINNATI INSURANCE COMPANY,** Syrett–Zeerip–Weidenfeller, **Inc.** and John J. Alkema, Appellees–Defendants.

No. 30A01–9411–CV–372.

Court of Appeals of Indiana.

Aug. 23, 1995.

James A. Fels, Susan W. Rempert, Tabor, Fels & Tabor, Indianapolis, for appellants.

Karl Mulvaney, Kathryn H. Burroughs, Bingham Summers Welsh & Spillman, Indianapolis, for appellees.

## OPINION

BAKER, Judge.

Appellants-plaintiffs Jerome and Jenny Trupiano appeal the trial court's grant of summary judgment in favor of appellees-defendants John J. Alkema, Syrett–Zeerip–Weidenfeller, Inc. (SZW), and Cincinnati Insurance (Cincinnati) on their claim of negligence. Specifically, the Trupianos allege that Alkema and SZW owed them a duty to advise them about underinsured motorist coverage and to provide an insurance policy with adequate limits for that coverage.

### FACTS

SZW is an insurance agency, located in Michigan, which primarily sells casualty insurance. Alkema is an insurance agent employed by SZW and licensed to sell insurance in Michigan. Jerome Trupiano is the president, treasurer, and fifty-percent owner of a closely held corporation, Operator Specialty Company (OSC), which manufactures door and gate opening devices. OSC is a Michigan corporation with its principal place of business in Michigan.

Beginning in 1972 or 1973, Jerome hired Alkema to be his personal insurance agent. Thereafter, in 1976, when Jerome formed OSC, he obtained insurance for the corporation through Alkema and SZW. Over the

next fourteen years, Alkema had a continuous relationship with OSC and advised OSC concerning various types of business coverage, including worker's compensation, comprehensive general liability, blanket building and contents insurance, loss of business income, and fleet automobile insurance. Initially, Alkema met directly with Jerome, at least once a year, to discuss insurance matters. However, between 1985 and 1989, Alkema dealt with Sid Albrecht, the general manager of OSC. During that time, Alkema and Albrecht met annually to discuss and review OSC's insurance coverages. In addition, Alkema conducted an annual review of all the policies which included a review of values, building amounts, payroll, sales and premiums. Alkema also sent an annual letter to OSC detailing the type and amounts of insurance, losses incurred, projected payrolls, and premiums. In these letters, he also reviewed the adequacy of the various coverages and made recommendations regarding coverages which he felt were inadequate.

Beginning in 1985, OSC purchased an automobile insurance policy with Cincinnati through Alkema and SZW to insure its business fleet of seven automobiles. Thereafter, the policy was renewed each year, including the policy for the relevant period, May 1989 to May 1990. SZW and Alkema issued the policy in accordance with Michigan law.

In December 1989, Jerome and Jenny were involved in a two car collision in Hamilton County, Indiana. As a result, Jerome sustained serious injuries and incurred over $76,000 in medical expenses. The Cadillac that Jerome was driving was covered under OSC's policy which provided coverage to anyone occupying a covered vehicle. In addition, Jerome was specifically listed in the policy as an insured driver. OSC's policy contained $40,000 in underinsured motorist coverage. Under the policy, the amount of insurance carried by the tortfeasor would reduce the amount of underinsured motorist coverage payable under the policy. Here, the driver of the other car carried $100,000 of liability insurance and the policy limits have

been paid to the Trupianos. Thus, because the Trupianos received $100,000 from the driver, they were not entitled to any benefits under their underinsured motorist coverage.[1]

On October 6, 1993, the Trupianos filed an amended complaint against Alkema, SZW, and Cincinnati alleging that the $40,000.00 underinsured motorist coverage was "wholly inadequate" and that Alkema and SZW were negligent in failing to advise them about and provide adequate limits of underinsured motorist coverage. The Trupianos' claim against Cincinnati is based on a theory of respondeat superior.

On April 21, 1994, Alkema and SZW filed a motion for summary judgment claiming that they did not owe a duty to the Trupianos to advise about and provide an insurance policy with a higher amount of underinsured motorist coverage. Thereafter, Cincinnati filed a motion for summary judgment. On August 2, 1994, the trial court granted Cincinnati's motion for summary judgment and on August 11, 1994, the court granted Alkema and SZW's motion for summary judgment.

## DISCUSSION AND DECISION

■ When reviewing a trial court's grant of summary judgment, we are bound by the same standard as the trial court and we will consider only the evidence which was designated at the summary judgment stage. *Edrington v. Rush County Bd. of Com'rs* (1995), Ind.App., 648 N.E.2d 397, 398. Summary judgment is appropriate where the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* We will liberally construe the non-movant's designated evidence in order to ensure that he is not denied his day in court. *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434.

■ The parties concede that Michigan substantive law is controlling. Thus, in order to recover on a theory of negligence, a plaintiff must show that the defendant owed

1. Although OSC's policy also contained personal injury protection (PIP) benefits pursuant to Michigan's no fault insurance law, we note that the PIP benefits provide only limited coverage for economic loss and do not include compensation for pain and suffering.

him a duty. The determination of whether a duty exists is a question of law for the court and, absent a duty, there is no actionable negligence. *Perez v. KFC National Management Co.* (1990) 183 Mich.App. 265, 454 N.W.2d 145, 146.

The Trupianos contend on appeal that the trial court erred in granting summary judgment because a genuine issue of material fact exists as to whether there was a special relationship between Alkema/SZW and OSC/Jerome which would create a duty to advise about the adequacy of the insurance coverage. Under Michigan law, an insurance agent generally does not have an affirmative duty to advise a client regarding the adequacy of a policy's coverage. *Bruner v. League General Ins. Co.* (1987) 164 Mich.App. 28, 416 N.W.2d 318, 320. Rather, the insured is obligated to read the policy and raise any questions concerning coverage within a reasonable time after its issuance. *Id.* However, a duty to advise may arise when a special relationship exists between the insurance agent or company and the policyholder. *Id.* In order to establish a special relationship, there must be something more than the ordinary insured-insurer relationship and a long-standing relationship alone is insufficient to create a special relationship. *Id.* at 321. Rather, in a longstanding relationship, there must be "some type of interaction on a question of coverage, with the insured relying on the expertise of the insurance agent to the insured's detriment." *Id.*

In *Bruner,* the plaintiff, who was injured in a hit-and-run accident in 1984, was insured under a no-fault policy issued by the defendant, an insurance agent, to her husband. The policy was issued in 1975 and renewed each year thereafter. Annually, the insurance agent sent a declaration page specifying the coverage provided under the policy. The policy in effect when the plaintiff was injured did not include uninsured motorist coverage, because the plaintiffs had never requested

such protection. *Id.* at 319. Although the plaintiffs stated in their affidavits that they placed their total trust in the defendant to provide appropriate coverage for their vehicles, the Michigan court of appeals affirmed the trial court's grant of summary judgment for the insurance company on the basis that the plaintiffs failed to allege any facts that could establish a special relationship between the plaintiffs and defendant. *Id.* at 321. The court reasoned that there was no allegation that the plaintiffs requested, expected, or relied upon the defendant to provide protection against uninsured motorists. *Id.*

In the present case, it is undisputed that SZW and Alkema had a long-standing relationship with both Jerome and OSC and that OSC had numerous commercial policies, including the automobile policy, issued through SZW and Alkema. Furthermore, Alkema provided advice about the types and amounts of insurance coverage which OSC and Jerome should have. In addition, the Trupianos alleged that Alkema and SZW held themselves out as insurance professionals and either knew or should have known that Jerome and OSC were relying on them for appropriate advice on the types and amounts of business auto insurance coverage that they should have. However, here, as in *Bruner,* there is no allegation that the Trupianos requested, expected, or relied upon Alkema or SZW to provide protection against underinsured motorists. In addition, there is no evidence of any interaction on the question of underinsured motorist coverage which would have alerted SZW and Alkema that the Trupianos and OSC had any concerns about the completeness and extent of the protection under their no-fault insurance policy.[2] *See id.* Accordingly, the Trupianos failed to establish a special relationship between the parties through which SZW and Alkema would have a duty to advise Jerome or OSC concerning the appropriate amount of the underinsured motorist coverage.[3]

---

**2.** In fact, from 1985 to 1989, Alkema did not have any discussions with anyone at OSC regarding changes in any of the areas of coverage that were contained in the automobile policy.

**3.** The Trupianos rely on *Palmer v. Pacific Indemn. Co.* (1977), 74 Mich.App. 259, 254 N.W.2d

52 and *Stein, Hinkle, Dawe & Associates Inc. v. Continental Casualty Co.* (1981), 110 Mich.App. 410, 313 N.W.2d 299 to support their contention that a genuine issue of material fact exists regarding whether a special relationship was created. However, we find that the more recent *Bruner* decision, in which the Michigan court of

Thus, the trial court properly granted summary judgment in favor of SZW, Alkema, and Cincinnati.

Judgment affirmed.

GARRARD, J., concurs.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Judge, concurring in result.

In footnote 3, the majority opinion seems to conclude that *Bruner v. League General Insurance Co.* (1987) 164 Mich.App. 28, 416 N.W.2d 318, impliedly overruled or declined to follow *Palmer v. Pacific Indemnity Co.* (1977) 74 Mich.App. 259, 254 N.W.2d 52, and *Stein, Hinkle, Dawe and Associates, Inc. v. Continental Casualty Co.* (1981) 110 Mich. App. 410, 313 N.W.2d 299. In *Bruner* the insurer had removed uninsured coverage from Bruner's policy because it was no longer required under Michigan law. There was no issue as to the adequacy of coverage; only as to whether under the circumstances the insurer should have provided uninsured coverage, although Bruner made no inquiry about such coverage. Here, the policy in question did in fact provide coverage of $40,000 as underinsured protection, even though Alkema, the insurance agent, was not aware that the provision was contained in the policy.

In any event, a subsequent case in the Michigan federal system applying Michigan law noted that *Bruner* states the general rule that there is no duty to affirmatively advise a client regarding adequacy of coverage. The court also stated, however, that there is an exception to the general rule, as spelled out in *Stein, supra,* i.e., if a special relationship exists. The court went on to cite and emphasize language from *Palmer, supra,* that "the existence of a special relationship is a question of fact". *St. Paul Fire and Marine Insurance Co. v. CEI Florida, Inc.* (1994) E.D.Mich., 864 F.Supp. 656.

Here, it appears to me that various factors were present which would permit a reasonable trier of fact to conclude that a special relationship existed. If such were the finding of fact, the trier of fact might also conclude that, under the circumstances as between Alkema and Trupiano, the relationship as to scope and adequacy of coverages was sufficient to trigger a duty to advise.

Notwithstanding the arguable existence of a genuine issue as to the material facts alluded to, I find no error in the grant of summary judgment. Here, Trupiano does not complain that he suffered loss because he was not advised as to underinsured coverage and therefore did not have such coverage; nor could he do so. The policy did in fact provide $40,000 underinsured coverage.

Trupiano's argument, in effect, would hold his insurance agent to a duty to not only advise, but to actually provide coverage in an amount to exceed any liability limits which *might* be carried by *any* motorist with whom Trupiano *might* have an accident. Perhaps the $40,000 coverage is less than what a careful insurance agent might advise for someone in Trupiano's position but no trier of fact could reasonably conclude that the carrier was required to advise or provide coverage in excess of $100,000. Even if Trupiano had coverage in an amount between $40,000 and $100,000, he would recover nothing in this lawsuit. I therefore concur in the affirmance of the summary judgment.

---

appeals considered both *Palmer* and *Stein,* is controlling and established the requirements for a special relationship which would create a duty

to advise an insured regarding the adequacy of coverage.